**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KARL PETER HORSCH; KIMBERLY HORSCH, *H/W*; ALLAN J. JACKSON; EILEEN JACKSON, *H/W*; THERESA DUFFIN; PAUL DUFFIN, *H/W*; RHIANNON LINDMAR; PAUL MILBOURNE; VILMA COLLIER; TROY ADAMS; THOMAS P. KENNEDY; SARAH KENNEDY, *H/W*; BRAD SALTZMAN; REBECCA SALTZMAN, *H/W*, | |
| Plaintiffs, | Civil Action No. 2:14-cv-02638-WY |
| v. | **DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.; WELLS FARGO BANK, N.A.; CITIMORTGAGE, INC. T/A CITIFINANCIAL; GREENTREE SERVICING, LLC; JP MORGAN CHASE BANK; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; NATIONSTAR MORTGAGE, LLC, | |
| Defendants. | |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant JPMorgan Chase Bank, N.A. ("JPMC"), by and through its undersigned counsel, hereby respectfully moves the Court for an order dismissing with prejudice Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted. The grounds for this motion are further set forth in the accompanying memorandum of law.

Dated:  September 26, 2014

<u>/s/ Thomas J. Sullivan</u>
Thomas J. Sullivan (PA Bar No. 88838)
Justin R. Drinkwine (PA Bar No. 309775)
tsullivan@morganlewis.com
jdrinkwine@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5000 (Telephone)
215.963.5001 (Facsimile)

*Attorneys for Defendant JPMorgan Chase
Bank, N.A.*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    FACTS AS ALLEGED ........................................................................................4

III.   LEGAL STANDARD ..........................................................................................6

IV.   ARGUMENT ......................................................................................................7

    1.    Plaintiffs' FCRA Claim Should Be Dismissed ........................................7

         a.    Plaintiffs Fail to State a Claim as a Matter of Law for Violation of the FCRA ....................................................................8

         b.    Plaintiffs Have Not Alleged, and Cannot Allege, a Negligent or Willful Violation of the FCRA ..........................................12

         c.    Plaintiffs Fail to Adequately Plead the Elements of a Section 1681s-2(b) FCRA Violation .......................................14

             i.    Plaintiffs Fail to Plead That JPMC Received Notice of a Dispute ..................................................................14

             ii.   Wanda Adams Fails to Plead a Section 1681s-2(b) Violation. ................................................................16

V.    CONCLUSION ................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................passim

*Ballentine v. United States,*
    486 F.3d 806 (3d Cir. 2007) ........................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................6, 7, 15, 16

*Chavez v. Premier Bankcard, LLC,*
    No. 11-cv-01101, 2011 WL 5417107 (E.D. Cal. Nov. 8, 2011) (*adopted and
    dismissed*, Dec. 14, 2011, 11-cv-01101 at Dkt. No. 12)........................................13

*DiPrinzio v. MBNA Am. Bank, N.A.,*
    No. 04-872, 2005 WL 2039175 (E.D. Pa. Aug. 24, 2005) ....................................11

*Edeh v. Equifax Info. Servs., LLC,*
    974 F. Supp. 2d 1220 (D. Minn. 2013), *aff'd*, 13-3364, 2014 WL 1851001 (8th Cir.
    May 9, 2014) ...........................................................................................12

*Fino v. Key Bank,*
    Civ. A. 00-375E, 2001 WL 849700 (W.D. Pa. July 27, 2001)...............................14

*Gonzalez-Bencon v. Doral Bank,*
    759 F. Supp. 2d 229 (D. P.R. 2010) ...............................................................15

*In re Bellano,*
    456 B.R. 220 (Bankr. E.D. Pa. 2011) ...............................................................9

*Krajewski v. Am. Honda Fin. Corp.,*
    557 F. Supp. 2d 596 (E.D. Pa. 2008)...............................................................8, 9

*Long v. Tommy Hilfiger U.S.A., Inc.,*
    671 F.3d 371 (3d Cir. 2012) .........................................................................12

*McGehean v. AF & L Ins. Co.,*
    CIV. A. 09-CV-01792-T, 2009 WL 3172763 (E.D. Pa. Oct. 2, 2009) ...................4

*Mortimer v. Bank of Am., N.A.,*
    No. C-12-01959-JCS, 2013 WL 57856 (N.D. Cal. January 3, 2013)..................9, 11

*Neiman v. Chase Bank, USA, N.A.,*
    No. 13-cv-8944, 2014 WL 3705345 (N.D. Ill. July 25, 2014)...............................15

*Raines v. Byrd,*
    521 U.S. 811 (1997) ...................................................................................15

*Roybal v. Equifax,*
    405 F. Supp. 2d 1177 (E.D. Cal. 2005) ......................................................14

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007) .....................................................................................12

*SimmsParris v. Countrywide Fin. Corp.,*
    652 F.3d 355 (3d Cir. 2011) .......................................................................14

*State Coll. Area Sch. Dist. v. Royal Bank of Canada,*
    825 F. Supp. 2d 573 (M.D. Pa. 2011) ...........................................................4

*Taggart v. Norwest Mortg., Inc.,*
    No. 09-1281, 2010 WL 114946 (E.D. Pa. Jan. 11, 2010) ..........................8

*Van Veen v. Equifax Info.,*
    844 F. Supp. 2d 599 (E.D. Pa. 2012) ...........................................................9

*Vassalotti v. Wells Fargo Bank, N.A.,*
    815 F. Supp. 2d 856 (E.D. Pa. 2011) ...................................................10, 11

*Visendi v. Bank of Am., N.A.,*
    733 F.3d 863 (9th Cir. 2013) ......................................................................15

**STATUTES**

11 U.S.C. § 302(a) ..............................................................................................5, 16

15 U.S.C. § 1681n .....................................................................................................12

15 U.S.C. § 1681o .....................................................................................................12

15 U.S.C. § 1681s-2(b) .......................................................................................passim

15 U.S.C. § 1681s-2(b)(1)(A)-(E)(iii) ......................................................................7, 8

**OTHER AUTHORITIES**

16 C.F.R. 600 app. § 607(b)(3)(F)(6) .........................................................................9

76 FR 44462, 44463 (July 26, 2011) ..........................................................................9

National Consumer Law Ct., *Consumer Bankruptcy Law & Practice App.* 1419 (App.
    K.3) (10th ed. 2012) ..................................................................................12

Rule 12(b)(6) ...............................................................................................................6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KARL PETER HORSCH; KIMBERLY
HORSCH, *H/W*; ALLAN J. JACKSON;
EILEEN JACKSON, *H/W*; THERESA
DUFFIN; PAUL DUFFIN, *H/W*; RHIANNON
LINDMAR; PAUL MILBOURNE; VILMA
COLLIER; TROY ADAMS; THOMAS P.
KENNEDY; SARAH KENNEDY, *H/W*;
BRAD SALTZMAN; REBECCA
SALTZMAN, *H/W*,

               Plaintiffs,

      v.

WELLS FARGO HOME MORTGAGE, A
DIVISION OF WELLS FARGO BANK, N.A.;
WELLS FARGO BANK, N.A.;
CITIMORTGAGE, INC. T/A
CITIFINANCIAL; GREENTREE
SERVICING, LLC; JP MORGAN CHASE
BANK; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
N.A.; NATIONSTAR MORTGAGE, LLC,

               Defendants.

Civil Action No. 2:14-cv-02638-WY

**DEFENDANT JPMORGAN CHASE
BANK, N.A.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT**

**MEMORANDUM OF LAW IN SUPPORT OF JPMORGAN CHASE BANK, N.A.'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.    INTRODUCTION**

      Plaintiffs' First Amended Complaint is the latest effort by the named plaintiffs and their

counsel to find a remedy under the law for the Defendant-banks' alleged failure to report

plaintiffs' "current" mortgage balances even after plaintiffs' mortgage debts were discharged in

bankruptcy.  In fact, the Amended Complaint represents the *fourth* such attempt by several of

the named plaintiffs.[1]  Despite the amendments to Plaintiffs' original complaint in this Court,

however, the fundamental premise of Plaintiffs' case theory remains unchanged and inexorably

flawed.  There simply is no law or regulation – and Plaintiffs point to none – that requires the

Defendant-banks to report the status of Plaintiffs' mortgage loans as "current" where their

voluntary payments were preceded by the bankruptcy discharge of their obligations to repay their

mortgages and Plaintiffs' choice not to reaffirm those debts.  Accordingly, Plaintiffs' efforts to

frame the Defendant-banks' alleged practices as a violation of the reporting requirements of the

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") fail.

In the last go-round, plaintiffs added Paula Milbourne and Troy Adams ("Plaintiffs") as

named plaintiffs, as well as JPMorgan Chase Bank, N.A. ("JPMC") as a defendant to their Class

Action Complaint in Civil Action No. 2:14-cv-02638-WY, filed on May 8, 2014 (the

"Complaint").  (*See* Dkt. No. 1).[2]  In response to the motions to dismiss filed by Defendants,

Plaintiffs have now abandoned the bulk of their previous claims, apart from a single purported

cause of action under the FCRA.  Nevertheless, Plaintiffs' First Amended Class Action

Complaint in Civil Action, dated September 2, 2014 (the "Amended Complaint"), represents

merely a restructuring and rewording of the same flawed theory that Plaintiffs previously have

asserted.[3]

---

[1] JPMC hereby adopts and incorporates by reference the arguments, and supporting authority, set forth in the motions to dismiss and accompanying memoranda of law filed by Defendants Wells Fargo Bank, N.A., Bank of America, N.A., Citi Mortgage Inc., GreenTree Servicing LLC, and Nationstar Mortgage, LLC, to the extent applicable.

[2] Plaintiffs also added Mr. Adams's wife, Wanda Adams, to both the Complaint (Compl. ¶ 31), and the Amended Complaint (Am. Compl. p. 5/"Section II – PARTIES-PLAINTIFFS-G").  However, it remains unclear whether her inclusion is as a purported plaintiff.  For the reasons discussed herein, Wanda Adams, who has no alleged connection to JPMC or the credit reporting at issue, and has no apparent claim against JPMC, is not a proper plaintiff, assuming she purports to be.

[3] Plaintiffs' Amended Complaint is improperly numbered, as the numbered paragraphs jump from 80 to 68 beginning on page 24.  For purposes of this memorandum, JPMC will refer to paragraphs in the Amended Complaint along with the page numbers on which they appear.

The allegations underlying Plaintiffs' sole remaining cause of action also remain unchanged from their prior complaint. Plaintiffs are mortgagors who filed for bankruptcy and subsequently had their debts discharged. As part of the bankruptcy process, Plaintiffs affirmatively chose not to reaffirm their debts. Instead, they received bankruptcy discharge orders discharging their personal liability to pay their mortgage debts. Thus, following their respective bankruptcy discharges, Plaintiffs had no legally cognizable mortgage debts. Plaintiffs now take issue with the necessary results stemming from their own voluntary choices and misguidedly attempt to bring a claim against JPMC that has no basis in law or fact.

Following their discharges in bankruptcy, which they had sought, Plaintiffs allege that their credit reports failed to list their mortgage payment status, which Plaintiffs contend is "current." Despite the discharge orders in effect, Plaintiffs now contend that the JPMC should report their mortgage balances as "current," rather than "zero," because they voluntarily continue to make payments on the discharged loans. Based on that flawed premise, Plaintiffs have brought this putative class action for an alleged violation of the FCRA.

Contrary to Plaintiffs' allegations and underlying legal theory, JPMC accurately reported Plaintiffs' mortgage loans as having a zero balance because Plaintiffs' obligations to pay those loans were discharged by the Bankruptcy Court, as a result of their affirmative decisions to seek to discharge and not reaffirm their debts. That Plaintiffs voluntarily continue to make payments on the loans because, per their allegations, JPMC could in theory still foreclose on their properties for nonpayment, does not in any way alter the indisputable fact that their obligations to pay were discharged per the Bankruptcy Court's orders that were entered at Plaintiffs' request. Plaintiffs' suggestions that JPMC should report their obligations as "current" would run afoul of the decisional authority regarding how such reporting is to be handled. Moreover, Plaintiffs

allege that "Defendants" performed reasonable investigations after Plaintiffs' purported inquiries to the Credit Reporting Agencies ("CRAs"), reported those results to the CRAs, and the reporting remained the same. Accordingly, Plaintiffs' sole claim, brought under the FCRA, fails. Plaintiffs' recycled allegations are as misguided today as they were when they voluntarily dismissed the prior lawsuits and when they filed the original Complaint. Accordingly, Plaintiffs' latest complaint should be dismissed with prejudice.

## II.    FACTS AS ALLEGED

Plaintiffs Paula Milbourne and Troy Adams, who purport to represent one of two putative subclasses, allege that they obtained residential mortgage loans from JPMC. (Am. Compl. p. 10/¶ 39(c)). Paula Milbourne filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Pennsylvania on July 6, 2007. (*Id.* p. 5/¶ 23). Troy Adams filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania on April 20, 2007. (*Id.* p. 6/¶ 24). Both Plaintiffs were represented in bankruptcy by the same counsel now prosecuting this action. *See Docket, In Re Paula Milbourne*, No. 07-13816-bif (Bankr. E.D. Pa.) (attached hereto as Ex. "A"); *Docket, In Re Troy Adams*, No. 07-12299-elf (Bankr. E.D. Pa.) (attached hereto as Ex. "B").[4]

Supposed "plaintiff" Wanda Adams, Mr. Adams's wife, is referenced as a plaintiff by one heading in the Amended Complaint (Am. Compl. p.5/"Section II – PARTIES-PLAINTIFFS-

---

[4] Plaintiffs have not attached their bankruptcy dockets to the Amended Complaint, however, the Court may take judicial notice of the bankruptcy court dockets (attached hereto as Exs. A and B), because the Amended Complaint incorporates by reference the "docket entries of the respective bankruptcies" (Am. Compl. p.10/¶ 37) and they are matters of public record. *See State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, 577-78 (M.D. Pa. 2011) ("In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as 'documents that are attached or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'") (citations omitted); *McGehean v. AF & L Ins. Co.*, CIV. A. 09-CV-01792-T, 2009 WL 3172763, at *2 (E.D. Pa. Oct. 2, 2009) (internal citations omitted) ("On a motion to dismiss, courts take judicial notice of documents which are matters of public record such as . . . court-filed documents.").

G"), but is not alleged to have any connection whatsoever with JPMC, and JPMC is not alleged to have submitted any information to the CRAs pertaining to her.  (*See id.* p. 27/¶ 68(h) n.14). Mrs. Adams is not otherwise named as a plaintiff (*e.g.*, in the caption) and the Complaint is devoid of any specific factual allegations about her, except that she is "not on the mortgage, note, or deed" of Mr. Adams.  (Am. Compl. p.6/¶ 25; *see also id*. p. 27/¶ 68(h), n. 14).  Moreover, Mrs. Adams also is not referenced in the bankruptcy case of Troy Adams (*See* Ex. "B").

Plaintiffs' Amended Complaint acknowledges that reaffirmation of the Note is available to debtors in bankruptcy, whereby the debtor remains liable on the Note as if the discharge had not occurred.   (Am. Compl. p. 15/¶ 54(d) n. 8).  Such reaffirmations are alleged to have been available to Plaintiffs Paula Milbourne and Troy Adams, who filed for bankruptcy in the Eastern District of Pennsylvania.  (*Id*.; *see also* Exs. A and B).  Critically, Plaintiffs chose not to reaffirm their mortgage debts with JPMC.  (Am. Compl. p. 2/¶ 6(b); p. 32/¶80).  The bankruptcy court issued a discharge order to Paula Milbourne on February 15, 2013 (*See In Re Paula Milbourne*, Dkt. No. 92*, attached hereto as Ex. "C"), and to Troy Adams on May 5, 2014 (*See In Re Troy Adams*, Dkt. No. 121, attached hereto as Ex. "D").[5]  The discharge orders provided that creditors may have the right to enforce a valid lien if that lien was not avoided or eliminated in the bankruptcy case:

> [A] creditor may have the right to enforce a valid lien, such as a mortgage . . . against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

*See* Exs. C and D, p. 2.

---

[5] Plaintiffs have not attached their bankruptcy discharge orders to the Amended Complaint, however, the Court may take judicial notice of the discharge orders (attached hereto as Exs. C and D), because the Amended Complaint incorporates by reference the "docket entries of the respective bankruptcies" (Am. Compl. p.10/¶ 37) and they are matters of public record.  *See supra* note. 4.

Plaintiffs allege that after their respective bankruptcy discharges, they have maintained current payments on their mortgages, despite the fact that they chose to discharge, rather than reaffirm, their mortgage debts. (Am. Compl. p.10/¶ 40). They further allege that JPMC reported their mortgage balances as "zero." (*Id*. p. 14/¶ 54(b)).

Plaintiffs further allege generally that they notified the CRAs (Transunion, Experian, and Equifax) that they contested the credit reports provided by JPMC and requested an investigation and correction of the payment history set forth on their respective credit reports. (*Id*. p. 19/¶ 59; p. 20/¶ 61). JPMC is not alleged to have reported any information to the CRAs regarding Wanda Adams and, thus she is not alleged to have notified the CRAs that she contested any credit reports. Plaintiffs do not specifically allege that any of the CRAs notified JPMC of the Plaintiffs' alleged requests for an investigation and correction, but merely allege generally that all of the named plaintiffs believe that the CRAs notified "Defendants" of the purported disputes. (*Id*. p. 22/¶¶ 70-71; p. 33/¶85). Plaintiffs further allege that "[t]here has been no responsive correspondence in the matter of Paula Milbourne" (*id*. p. 27/¶68(f)), and indicate that Troy Adams's credit report has remained unchanged following the alleged "dispute." (*Id*. p. 27/¶68(h)). Finally, Plaintiffs allege that "Defendants" performed a "reasonable investigation" of "Plaintiffs'" disputes, reported the results back to the CRAs, and determined that the reporting was not inaccurate or incorrect. (*Id*. p. 22/¶ 73; p. 23/ ¶¶76, 79). Despite the reasonable investigations, Plaintiffs allege that the "Defendants'" reports were not accurate. (*Id*. p. 23/¶ 76).

## III.   <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff bears the burden of demonstrating the existence of facts sufficient to suggest the required element of its claim. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, the court is not required "to accept as true a legal conclusion couched as a factual allegation." *Id.* Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. The Supreme Court has made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## IV. ARGUMENT

### 1. Plaintiffs' FCRA Claim Should Be Dismissed.

Plaintiffs' sole remaining claim under FCRA section 1681s-2(b), which requires furnishers of information, upon receiving notice of a dispute from a CRA, to conduct a "reasonable investigation" to ensure that reported information is not "inaccurate or incomplete" or correct it (15 U.S.C. § 1681s-2(b)(1)(A)-(E)(iii)), should be dismissed as a matter of law for three independent reasons. *First*, JPMC's reporting was not inaccurate. Plaintiffs do not allege that JPMC failed to conduct an investigation, or that the investigation was deficient in any way. In fact, Plaintiffs expressly acknowledge that "Defendants," which includes JPMC, performed reasonable investigations. Instead, Plaintiffs contend that JPMC erred in not reporting their mortgage balances as "current" after its reasonable investigation. Plaintiffs' Amended Complaint, however, does not establish any inaccuracies in JPMC's reporting that would require JPMC to take corrective action or to report in a manner other than it did. *Second*, Plaintiffs fail to allege facts to support that the purported conduct rises to the level of willful or negligent noncompliance, as is required for a violation of section 1681s-2(b). *Third*, Plaintiffs' Amended Complaint is devoid of any specific factual allegations to support the claim that JPMC received notice of Plaintiffs' dispute from a CRA, as is required. Plaintiffs allege merely that the CRAs

"provided each respective Defendant with the notice of the dispute," but do not plead any facts that could reasonably support such an inference, as required under *Iqbal* and *Twombly*. Further, to the extent that Wanda Adams purports to be a plaintiff, she has failed to allege any facts that could establish a violation of section 1681s-2(b) pertaining to her. For those reasons, Plaintiffs' FCRA claims should be dismissed with prejudice.

> **a.** **Plaintiffs Fail to State a Claim as a Matter of Law for Violation of the FCRA.**

Plaintiffs fail to state a claim as a matter of law for a violation of FCRA section 1681s-2(b) because the information reported by JPMC is not inaccurate and, per Plaintiffs' own allegations, JPMC did not fail to investigate a dispute and its investigations were reasonable. While Plaintiffs allege that JPMC violated section 1681s-2(b) because it allegedly should have reported Plaintiffs' mortgage balance as "current" rather than zero, there is no legal support for that position, and thus the claim should be dismissed with prejudice.

Section 1681s-2(b) of the FCRA requires furnishers of information to conduct an investigation upon notification from a CRA that information has been disputed. *See* 15 U.S.C. § 1681s-2(b). After receiving a notice of a dispute from a CRA, a furnisher of information is required to (1) conduct an investigation of the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report inaccurate or incomplete results to all CRAs if the investigation finds inaccuracies; and (5) modify or delete inaccurate or incomplete items of information. *See* 15 U.S.C. § 1681s-2(b)(1)(A)-(E)(iii); *see also Taggart v. Norwest Mortg., Inc.*, No. 09-1281, 2010 WL 114946, at *9 (E.D. Pa. Jan. 11, 2010).

A furnisher need only conduct a "reasonable investigation" and "[a]bsent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher

need not do more than verify that the reported information is consistent with the information in its records." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 609 (E.D. Pa. 2008). Further, a furnisher is only required to correct inaccuracies uncovered during a reasonable investigation. *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012) ("A furnisher is not required to uncover and correct *all* inaccuracies on the consumer's credit report. Rather, a furnisher is required to correct only those inaccuracies it discovers during its reasonable investigation."). Ultimately, judgment as a matter of law in favor of the defendant is "proper if the reasonableness of the defendant's procedures is beyond question." *Krajewski*, 557 F. Supp. 2d at 609.

There is no apparent authority to support Plaintiffs' notion that JPMC should have reported their mortgage balances as "current" rather than "zero." Although the FCRA itself does not directly address how mortgage loans should be reported after a bankruptcy discharge, FTC guidance provides that "[a] consumer report may include an account that was discharged in bankruptcy . . . *as long as it reports a zero balance* to reflect the fact that the consumer is no longer liable for the discharged debt." 16 C.F.R. 600 app. § 607(b)(3)(F)(6).[6]

In fact, the decisional authority establishes that JPMC's reporting was proper, as a person's mortgage debt is accurately reported to a CRA as "$0.00" where his or her legal obligation to repay a mortgage balance (*i.e.*, debt) has been discharged in bankruptcy. *See, e.g.*, *Mortimer v. Bank of Am., N.A.*, No. C-12-01959-JCS, 2013 WL 57856, at *7 (N.D. Cal. Jan. 3, 2013) (noting that an account discharged through bankruptcy should be reported to CRAs as showing a zero balance to "avoid presenting a misleading picture").

---

[6] This guidance was promulgated by the Federal Trade Commission, which had enforcement authority for the FCRA until it was transferred to the Consumer Financial Protection Bureau in July 2011. *See* 76 FR 44462, 44463 (July 26, 2011).

In *Schueller v. Wells Fargo & Co.*, a plaintiff, whose mortgage debt was discharged by a Chapter 7 bankruptcy petition, alleged that Wells Fargo violated section 1681s-2(b) because his "credit report should not have reflected that his account was closed and had a zero balance due, and should have included the fact that he made payments after [discharge]." 559 F. App'x 733, 737 (10th Cir. 2014). The Tenth Circuit Court of Appeals upheld the district court's dismissal of the FCRA claim, holding that "Mr. Schueller has cited no authority requiring Wells Fargo to report his post-bankruptcy mortgage payments. Under these circumstances, we conclude that Mr. Schueller has not carried his burden of showing that the information Wells Fargo furnished was inaccurate or incomplete, nor has he shown that the information about his home loan debt and bankruptcy was materially misleading." *Id.*

Similarly, in *Vassalotti v. Wells Fargo Bank, N.A.*, 815 F. Supp. 2d 856 (E.D. Pa. 2011), the court held that the discharged plaintiffs (who chose to discharge rather than reaffirm their mortgage debts) no longer had legal obligations to pay their mortgage balances, and therefore the only correct way to report their mortgage debts was as discharged. *Id.* at 864. As here, the plaintiff argued that once Wells Fargo had received notice of her dispute from the CRAs, the fact that the notation on her credit report remained unchanged "prove[d] that Wells Fargo failed to investigate or refused to correct the mistake." *Id.* In ruling in favor of Wells Fargo, the court stated that "Vassalotti does not show that Wells Fargo 'failed to investigate or rectify the disputed charge.'" *Id.* (quoting *Taggart*, 2010 WL 114946, at *9).

Here, it is undisputed that Plaintiffs affirmatively allege that JPMC performed its duties under section 1681s-2(b). Plaintiffs repeatedly state that all Defendants, including JPMC, performed a reasonable investigation of the disputed information. (Am. Compl. p. 21/¶66; p. 22/¶73; p. 23/¶79; p. 33/¶85). Under section 1681s-2(b), JPMC is only required to perform an

investigation into the disputed information and modify incorrect information.  If the reported information is correct, it is only logical that there are no further steps to take.  As in *Vassalotti*, the fact that Plaintiffs' credit reports remained unchanged does not establish that JPMC failed to take necessary action, and is insufficient to establish a violation under section 1681s-2(b).

Unable to form a claim under section 1681s-2(b), as Plaintiffs make clear that they believe that the banks received notice of their dispute and performed reasonable investigations (Am. Compl. p. 22/¶ 73; p. 23/¶79), Plaintiffs purport to challenge whether the reports were accurate or, more precisely, whether their current mortgage payments should have been reported. In fact, however, Plaintiffs' challenge does not amount to a legally cognizable claim under section 1681s-2(b).  Moreover, there is no  authority requiring JPMC to report Plaintiffs' mortgage balances as "current" following their discharges, nor apparently is there any authority even suggesting that reporting discharged mortgage debt as "zero" is in any way inaccurate or improper.  Rather, as *Schueller*, *Vassalotti*, and *Mortimer* demonstrate, reporting discharged mortgage debt as "zero" is entirely proper and accurate under the law.  There is no authority holding that JPMC is required to report Plaintiffs' voluntary monthly mortgage payments after the debt is extinguished.  Plaintiffs chose not to reaffirm their mortgage debt, and therefore, post-discharge, no debt exists.  Effectively, Plaintiffs are asking that JPMC modify already-correct reports to not only state that the accounts were discharged in bankruptcy, but also to state that the former debtors (who are no longer debtors) are continuing to make payments.  The law, however, imposes no such obligation on JPMC, and the cases cited above make clear that JPMC's reporting was accurate.[7]  Thus, Plaintiffs' Amended Complaint fails to allege a claim under section 1681s-2(b) as a matter of law and it should be dismissed with prejudice.

---

[7] Plaintiffs' request that JPMC report that their accounts are current may, in fact, run afoul of the FCRA and impair their credit.  *See DiPrinzio v. MBNA Am. Bank, N.A.*, No. 04-872, 2005 WL 2039175, at *4 (E.D. Pa. Aug. 24,

### b. Plaintiffs Have Not Alleged, and Cannot Allege, a Negligent or Willful Violation of the FCRA.

Plaintiffs' FCRA claim also fails as a matter of law because JPMC's alleged conduct does not and cannot manifest "willful" or negligent noncompliance with the FCRA. Plaintiffs have alleged no facts to show that JPMC failed to comply with the FCRA at all, much less willfully or negligently. The FCRA imposes civil liability on "any person who *willfully* fails to comply." *See* 15 U.S.C. § 1681n (emphasis added). A violation of the FCRA is "willful" only if the defendant knew it was violating the statute, or it acted with "recklessness," *i.e.*, "an unjustifiably high risk of harm that is either known or so obvious that it should [have] known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53, 68 (2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Further, a willful violation is less likely to occur where there is little to no authoritative guidance on the subject. *Id.* at 70 ("This is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC."). As long as the defendant's interpretation is not "objectively unreasonable," a claim for a willful violation fails as a matter of law and should be dismissed. *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377-78 (3d Cir. 2012).

The FCRA also imposes civil liability for "negligent" non-compliance. *See* 15 U.S.C. § 1681o. In order to establish a negligent violation, a plaintiff must plead actual damages and not rely simply on general legal conclusions. *Id.* § 1681o(a)(1); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1242 (D. Minn. 2013), *aff'd*, 13-3364, 2014 WL 1851001

---

2005) (representation of discharged debt as due and owing is "actionable [under the FCRA] because it is misleading or materially incomplete"); *see also* National Consumer Law Ct., *Consumer Bankruptcy Law & Practice App.* 1419 (App. K.3) (10th ed. 2012) ("Debts discharged in your bankruptcy should be listed on your credit report as having a zero balance, meaning you do not ow[e] anything on the debt.").

(8th Cir. May 9, 2014).  Conclusory allegations of "willful" or "negligent" violations of the FCRA are insufficient to sustain such a claim.  *See, e.g.*, *Chavez v. Premier Bankcard, LLC*, No. 11-cv-01101, 2011 WL 5417107, at *4 (E.D. Cal. Nov. 8, 2011) (M.J. G. Austin) (recommending dismissal to the district court judge because "other than stating the legal conclusion that Defendants acted negligently and willfully, Plaintiff has not provided any factual basis to support these causes of action") (*adopted and dismissed*, Dec. 14, 2011, 11-cv-01101 at Dkt. No. 12).

While Plaintiffs allege that "Defendants" "acted with knowledge and have intentionally and willfully" failed to correct their credit reporting (Am. Compl. p. 39/¶117), the Amended Complaint does not contain any specific factual allegations that JPMC knowingly or recklessly violated any recognized authority that would require JPMC to report Plaintiffs' payments as they propose, and there does not in fact appear to be any such authority.  As set forth in *Chavez*, Plaintiffs' conclusory allegations are insufficient to sustain any such claim and warrant dismissal.  Logically, there can be no willful or negligent violation of the FCRA where JPMC reported Plaintiffs' discharged loans in accordance with applicable guidance and relevant decisional authority, and where the FCRA itself does not address how a mortgage loan should be reported after a bankruptcy discharge where the debtors do not reaffirm the debts but voluntarily continue to pay on a mortgage.

As such, Plaintiffs' claims should be dismissed with prejudice because there is, and can be, no factual basis alleged to support liability for damages based on a negligent or willful violation of 1681s-2(b).

### c. Plaintiffs Fail to Adequately Plead the Elements of a Section 1681s-2(b) FCRA Violation.

In addition to the arguments above, Plaintiffs' claim also fails because they have not alleged sufficient facts at all – much less with the requisite particularity – to plead the elements of a claim under section 1681s-2(b).

### i. Plaintiffs Fail to Plead That JPMC Received Notice of a Dispute.

The duties of a furnisher of information are triggered only "[a]fter [the furnisher receives] notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). There is no duty of a furnisher of information to investigate absent notice from a CRA regarding a dispute about the completeness or accuracy of information. *Id.*; *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) ("It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate."); *see also Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005) ("The furnisher's duty to investigate, however, does not arise unless it receives notice of the dispute from the CRAs directly.").[8]

Federal courts considering FCRA claims since *Twombly/Iqbal* have required plaintiffs to plead specific facts that the furnisher of information received notice of a dispute from a CRA.

---

[8]Although Plaintiffs contend that they have "requested" that JPMC accurately report that they are current on their mortgage payments (Am. Compl. p.13/ ¶49(F), (G); p.18/¶ 55), any such request by Plaintiffs to JPMC directly is insufficient to trigger JPMC's duty to investigate. *Fino v. Key Bank*, Civ. A. 00-375E, 2001 WL 849700, at *5 (W.D. Pa. July 27, 2001) (reasoning that a section 1681s-2(b) private cause of action is available only where the furnisher received notice of the dispute from a consumer reporting agency, as opposed to the consumer); *Roybal*, 405 F. Supp. 2d at 1179-80 (holding that the furnisher's duty to investigate "does not arise unless it receives notice of the dispute from the CRAs directly. Bypassing [this] filter and contacting the furnisher of credit information directly does not actuate the furnisher's obligation to investigate nor does it give rise to a private right of action."). Even assuming *arguendo* that it was sufficient to trigger any duty to investigate, Plaintiffs do not allege a single specific fact about the alleged request that could support a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 663.

*See Neiman v. Chase Bank, USA, N.A.*, No. 13-cv-8944, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014) (dismissing plaintiffs' claims under section 1681s-2(b) because plaintiffs failed to adequately allege that Chase had received notice of a dispute from a CRA "in accordance with the Supreme Court's opinions in *Twombly* and *Iqbal*"); *Gonzalez-Bencon v. Doral Bank*, 759 F. Supp. 2d 229, 235 (D.P.R. 2010) (stating that, "under *Iqbal's* rigorous standard, this Court cannot merely draw all reasonable inferences in plaintiff's favor absent factual allegations as to each material element necessary to sustain recovery under some actionable legal theory").

While Plaintiffs have had multiple bites at the apple, they still fail to adequately allege that JPMC received notice of Plaintiffs' dispute from the CRAs. The Amended Complaint contains no specific allegation that JPMC received notice of a dispute from the CRAs. Plaintiffs allege merely that they "believe and therefore assert that each of the respective Defendants received notice from the respective CRAs . . ." (Am. Compl. p. 22/¶71). Plaintiffs also allege that "each of the respective CRA's [sic] then contacted each of the respective Defendants . . ." (*Id*. p. 33/¶ 85). Similar to the plaintiff in *Neiman*, Plaintiffs have alleged no specific facts to support the notion that the CRAs notified JPMC of a dispute, and thus their claim should be dismissed for failure to satisfy the pleading standard under *Iqbal* and *Twombly*.[9]

### ii.    Wanda Adams Fails to Plead a Section 1681s-2(b) Violation.

To the extent Wanda Adams considers herself a plaintiff, she fails to plead a violation of section 1681s-2(b), which is the only purported legal claim asserted in the Amended Complaint.

---

[9] The Amended Complaint also is improper because it attempts to group into a single action unrelated defendants who entered numerous separate transactions with unrelated, different plaintiffs. Under such circumstances, courts routinely sever actions for misjoinder. *See, e.g., Visendi v. Bank of Am., N.A.*, 733 F.3d 863 (9th Cir. 2013) (reversing order denying motion to dismiss for misjoinder in action involving "distinct loan transactions with many different lenders," with "loans . . . secured by separate properties scattered across the country"). With the exception of Paula Milbourne and Troy Adams, no other plaintiff allegedly had any contact with JPMC, and accordingly, no other plaintiff has Article III standing to assert claims against JPMC. *See Raines v. Byrd*, 521 U.S. 811, 819 (1997); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Because the claims here are so patently flawed for other reasons, however, this motion to dismiss is the most efficient means of resolving this action. If necessary, JPMC will raise the misjoinder and Article III issues at a later date.

The Amended Complaint provides no facts that could plausibly state a claim for violation of section 1681s-2(b) under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The Amended Complaint references Wanda Adams under "Section II – PARTIES-PLAINTIFFS-G." (Am. Compl. p. 5). That is the only place in the Amended Complaint in which she is identified as a purported plaintiff. She is not identified in the case caption as a named plaintiff. Further, she is not on the underlying note, deed or mortgage that was signed by Troy Adams, and therefore she is not a co-debtor with Troy Adams. (*Id.* p. 27/¶68(h), n. 14).

Notably, the Amended Complaint is devoid of any allegations that JPMC reported anything to the CRAs about Wanda Adams or, obviously, that Wanda Adams notified any CRA of a dispute relating to reporting by JPMC. Thus, she fails to allege key elements of section 1681s-2(b). Moreover, there are no allegations that Wanda Adams ever declared bankruptcy as a joint debtor with Troy Adams pursuant to 11 U.S.C. § 302(a). Accordingly, she also cannot be a representative or member of either putative Subclass 1 or putative Subclass 2 by their very definitions.[10] For those reasons, assuming that Wanda Adams purports to be a plaintiff in this case, she should be dismissed as a matter of law.

---

[10]JPMC reserves its arguments regarding the inappropriateness of class certification, which is not presently before this Court.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, JPMC respectfully requests that the Court dismiss Plaintiffs'

First Amended Complaint with prejudice and grant such other and further relief as is just and

proper.

*/s/ Thomas J. Sullivan*

Dated:  September 26, 2014

Thomas J. Sullivan (PA Bar No. 88838)
Justin R. Drinkwine (PA Bar No. 309775)
tsullivan@morganlewis.com
jdrinkwine@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5000 (Telephone)
215.963.5001 (Facsimile)

*Attorneys for Defendant JPMorgan Chase
Bank, N.A.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 26th day of September, 2014, a copy of the foregoing document was filed electronically this day and is available for viewing from the Court's ECF system. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*/s/ Justin R. Drinkwine*
Justin R. Drinkwine