## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KARL PETER HORSCH AND** | : | **CIVIL ACTION** |
| **KIMBERLY HORSCH, H/W, *ET AL*.** | : | |
| | : | |
| **Plaintiffs** | : | **2014-cv-2638  WY** |
| | : | |
| **Vs.** | : | |
| | : | |
| **WELLS FARGO HOME MORTGAGE,** | : | |
| **A DIVISION OF WELLS FARGO** | : | |
| **BANK, N.A.  AND WELLS FARGO** | : | |
| **BANK,  N.A., *ET AL*. ,** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO THE MOTIONS BY DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 123(b)(6)

AND NOW, come Plaintiffs, Karl Peter Horsch and Kimberly Horsch, H/W, Allan J. Jackson and Eileen Jackson, H/W, Paul Duffin and Theresa Duffin, H/W, Rhiannon Lindmar, Paula Milbourne, Vilma Collier, Troy Adams, Thomas P. Kennedy and Sarah Kennedy, H/W, and Brad Saltzman and Rebecca Saltzman, H/W (hereinafter referred to cumulatively as "Plaintiffs", unless otherwise specifically designated by name), and files this Memorandum of Law in Support of Plaintiffs' Response to the Motions to Dismiss the First Amended Complaint Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) (the "Motions"), filed by Defendants, Wells Fargo Home Mortgage, A Division of Wells Fargo bank, N.A., Wells Fargo Bank, N.A. ("Wells Fargo"), Citimortgage, Inc. ("Citimortgage"), Green Tree Servicing, LLC. ("Green Tree"), JPMorgan Chase Bank, N.A. ("JPMorgan" or "Chase"), Bank of America ("BOA"), and Nationstar Mortgage, LLC ("Nationstar") (all Defendants are hereinafter referred to cumulatively as "Defendants", unless otherwise specifically designated by name).  It is intended that this lawsuit shall pertain to any successors in interest of the Defendants.

1

## I.   PRELIMINARY STATEMENT[1]

Each and all of the Defendants in the captioned matter have filed Motions to Dismiss Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), citing similar reasons and similar cases to justify the position of the Defendants that the First Amended Complaint is fatally flawed. There are essentially no material differences between the various Motions to be addressed. Thus, this response is intended to address the issues raised by all Defendants, and to be responsive to all of the Motions.

## II.   INTRODUCTORY STATEMENT

As discussed in the factual analysis of the First Amended Complaint, each and every Plaintiff has maintained a current payment status for their respective residential mortgages for the period of time preceding, throughout and after discharge of their respective bankruptcies, with the exception of Plaintiffs, Eileen Jackson and Paul Duffin , neither of whom have been in bankruptcy, but each of whom has nonetheless kept their respective mortgages current. Regardless, Defendants ("furnishers of credit information") have intentionally failed to report to Credit Reporting Agencies ("CRA's") the current payment status of all of the mortgages of all of the Defendants, instead reporting either nothing pertaining to the mortgage account, or the status as of the filing of bankruptcy, with no report as to current payments having been and continuing to be made.

As discussed in the First Amended Complaint, as a direct and proximate result of the dramatically inaccurate credit reporting by the Defendants, each and every Plaintiff, but for

---

[1] [ERRATA;  At page 24 of the First Amended Complaint, there is an error in numbering beginning with a second set of numbers at paragraph 68, after paragraph 80 on page 23.  The numbering re-continues from paragraph 68, *et seq.* on page 24.]

Eileen Jackson and Paul Duffin[2], has suffered the loss of the promise of a "fresh start" so prominently pledged by the United States Congress in enacting and amending the United States Bankruptcy Code, Title 11.

As cited by *In re: Steven M. Schafer, Debtor, Richardson, Trustee v. Schafer,* 689 F.3d 601, 613 (6th Cir., 2012), *Perez v. Campbell,* 402 U.S. 637, 644, 91 S. Ct. 1704, 29 L. Ed 2d 233 (1971), the purpose of a discharge in bankruptcy "is to provide bankruptcy debtors with the right to retain certain essential property and thereby emerge from bankruptcy with a **fresh start**. Similarly, 'one of the primary purposes of [federal bankruptcy law] is to give debtors a **new opportunity in life** and a **clear field for future effort**, unhampered by the pressure and discouragement of pre-existing debt.'" [Emphasis supplied.]

Of greater disappointment, but with equal devastating impact, are the failures of the Defendants, and Credit Reporting Agencies ("CRA's"), and, potentially, the interpretation of the Fair Credit Reporting Act (15 U.S.C. §1681, *et seq.*)(the "FCRA") by the Courts, in treating co-debtor (non-filing) spouses as if they have been in bankruptcy by providing CRA's with the same intentionally inaccurate, officious, and highly detrimental reports as filed of the discharged plaintiffs/debtors. These non-filing co-debtor spouses should have been and should be accorded the same status as if bankruptcy was not an issue.

Nonetheless, Plaintiffs have all been reported by the furnishers of information to the respective CRA's as if residential mortgages:

        a.      Do not exist; and/or

        b.      Are not current;

---

[2] Eileen Jackson and Paul Duffin are co-debtor spouses of Allan Jackson and Theresa Duffin respectively, the latter two having received their bankruptcy discharges. Eileen Jackson and Paul Duffin are plaintiffs who have similarly maintained current residential mortgage payments, yet have never been in bankruptcy..

        c.      With no payments being made; and

        d.      With no explanation; and

        e.      No designation of a "dispute" and the nature thereof.

Each and all of the Plaintiffs have attempted to achieve credit for various purposes[3], and have each and all been rejected because of the failure of accurate reporting by Defendants to the CRA's.

The primary defense of the Defendants, in addition to their communal representations of a lack of technical compliance with the FCRA, is the stated failure of the debtors to "reaffirm"[4] their respective mortgage debt[5]. Each and every Defendant has observed that, if the respective Plaintiffs HAD or WILL YET reaffirm the Debts represented by the mortgage Note, then current reporting to the CRA's WILL be made.

As a general observation, in fact, the Bankruptcy Courts are reluctant to grant reaffirmation agreements of residential mortgages because, in most situations, they provide the debtor in bankruptcy with no benefit, while, at the same time, conferring a superfluous benefit on the secured creditors: Basically, the right to seek a deficiency balance[6] on a post-discharge default.

---

[3] Credit extension has either not been available or the interest rates charged far exceed available rates had accurate reporting of keeping current mortgage payments been maintained by the Defendants.

[4] "Reaffirmation Agreements" are contractual obligations by which a debtor in bankruptcy agrees with the secured creditor to continue to be bound by the terms and conditions of a pre-bankruptcy secured obligation. *See* 11 U.S.C. § 524(c).

[5] Without a reaffirmation agreement, the Note – the obligation to repay the loan for which a mortgage was granted as collateral security therefor – is discharged. The security agreement is **not** affected and controls the treatment of collateral; effectively, the same as with or without a reaffirmation.

[6] Against persons who, by definition in most cases, have no money

The consequence of signing a residential mortgage reaffirmation agreement is[7]: If you default in your mortgage obligations, you will be liable for any deficiency balance that may accrue as the result of a foreclosure. The consequence of NOT signing a reaffirmation is only that, in the event of a default and foreclosure in the future, the debtor is NOT liable for any deficiency balance resulting therefrom.

In **ANY** event, as long as there is a collateral security agreement, such as a mortgage, in order to maintain one's continuing ownership of the residence that is the subject of the mortgage, payments as provided in the terms and conditions set forth in the discharged note must nonetheless continue to be maintained, or the residence will be subject to foreclosure, regardless of the discharge of the Note, regardless of reaffirmation.

Furthermore, the non-filing spouse continues liable on the Note AND the mortgage.

"However, reaffirmation is viewed as a classic evil in bankruptcy law, and is dealt with in the Code so as not to exalt or enable it, but, rather, so as to regulate and scrutinize it, in light of its misuse. *See* U.S.C. § 524(c). As one commentator has observed, '[s]ection 524, … allows reaffirmations when it benefits debtors to do so, but requires extensive procedural safeguards to prevent ill advised reaffirmations.' [Citation omitted.]" *In re Price, Price, et al. v. Delaware State Police Federal Credit Union, U.S. Trustee*, 370 F.3d 362, 378 (3d. Cir. 2004).

Several courts have interpreted the failure to accurately reflect the current status of mortgage payments as efforts to "coerce" entering into a reaffirmation agreement, or to take other steps not required of debtor(s).

"A creditor [furnishes information on] both performing and delinquent accounts in the expectation that other credit grantors will do the same, enhancing each creditor's ability to

---

[7] Assuming the Court does not deny the reaffirmation agreement

5

evaluate proposed credit transactions and to avoid extending credit or making loans to poor credit risks." *In re: Amy E. Kowall, Kowall v. GMAC Mortgage, LLC*, Case No. 04-33668, Adv. No. 10-03221, U.S.B.C., E.D. MI, S.D. 2011). This citation alone elicits the inherent unfairness in furnishing a report to the CRA's that do not evidence that Plaintiffs have been paying the current monthly mortgage payment on a current basis since prior to the inception of, throughout and after bankruptcy. Instead, Defendants failure to report monthly payments being made on a current basis have the exact opposite effect: Any creditor looking to extend credit will see no Plaintiffs' status indicating creditworthiness, particularly with a report concerning a mortgage, as the furnishers of credit information eliminate and preclude any favorable reference to maintaining a positive credit reference such as making current mortgage payments.[8]

Finally, as to assertions by Defendants as to the failure of Plaintiffs to succinctly represent that there were investigations and that such investigations were "reasonable", these averments are the proper subject for discovery as Plaintiffs clearly do not have the "inside track" on the behavioral responses of Defendants internally and "by-and-between" the furnisher of credit information and the CRA's after Plaintiffs properly did that which is required under the FCRA to achieve an investigation and a corrective report.

The captioned case should be permitted to proceed with discovery. Plaintiffs are entitled to their "fresh start", beginning with honest and accurate credit reporting.

Finally, there is no issue as to the absolute fact that the intentional and inaccurate reporting by Defendants is the result of policies and procedures promulgated by the credit industry, and the credit reporting by Defendants is so firmly established that "negligent"

---

[8] Clearly, maintaining current mortgage payments over a significant period of time is one of the most unquestionable and irrefutable favorable qualities in any person's credit profile.

6

reporting is clearly not an issue. The issue is the intentional and willful misrepresentations by Defendants.

## IV.    HISTORY OF THE CASE

Defendants have made much of the fact that the captioned First Amended Complaint is the fourth complaint[9] filed by the undersigned in two sequential actions, the first case, *Horsch, et al. v. Wells Fargo Home Mortgage, et al.*, U.S.D.C., E.D. Pa. 13-05138 WY, withdrawn without prejudice by counsel for the Plaintiffs.

Since the inception of the 2013 law suit, Plaintiffs' counsel has been consulted by and added to representation another seven (7) [additional] Plaintiffs[10] and four (4) additional Defendants. Therefore, Plaintiffs' counsel has confirmed that the issue of credit reporting by an industry-wide group of furnishers of information, and this policy of inaccurate and incomplete reporting is and has been a pervasive, comprehensive and destructive course of action adversely affecting the "credit" lives of his clients and to all discharged debtors and non-filing co-debtors throughout this Nation.[11]

Now, fourteen (14) Plaintiffs adversely affected by the intentional credit reporting lapses and failures by Defendants are seeking a change of this deleterious pattern to at least achieve accurate reporting of the current payment statuses of Plaintiffs and tens of thousands of Class members in the two sub-classes: 1) Debtors, and, 2) Debtors spouses who have not been in bankruptcy.

---

[9] The original and First Amended Complaint in *Horsch, et al. v. Wells Fargo Home Mortgage, et al.*, U.S.D.C., E.D. Pa. 13-05138 WY, and the original and First Amended Complaint in this captioned matter.

[10] All but one of the Plaintiffs developed from all-ready existing clients of Plaintiffs' counsel; one Plaintiff was referred.

[11] Since the filing of the First Amended Complaint in the captioned matter, two additional clients have reported the same treatment as presented in the First Amended Complaint. These are being handled outside of this Class Action.

## V.  STATEMENT OF FACTS[12]

Each and every Plaintiff, but for Eileen Jackson and Paul Duffin, filed for relief and protection under 11 U.S.C. Chapter 7 or 13, in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  Each and every Plaintiff has been and remains the titled owner of a residence that is and has been collateral for a mortgage loan.  ¶ 36.  *See also* ¶¶ 11, 13, 17, 20, 22, 23, 24, 26, and 28.

Plaintiffs, Eileen Jackson, wife of Plaintiff, Allan Jackson and Paul Duffin, husband of Theresa Duffin, did NOT file for bankruptcy protection under Title 11 U.S.C.  ¶ 38.  *See also* ¶¶ 15 and 18.

Each and every Plaintiff, but for Eileen Jackson and Paul Duffin, received a standard discharge pursuant to the Discharge Orders issued by the United States Bankruptcy Court for the Eastern District of Pennsylvania.  *See* ¶¶ 11, 13, 17, 20, 22, 23, 24, 26, and 28.

Each and every Defendant was timely noticed of the bankruptcy filing of the respective Plaintiffs, and the discharges awarded to each and every Plaintiff, but for Eileen Jackson and Paul Duffin.  *See* ¶¶10, 13, 17, 20, 22, 23, 24, 26 and 27.

Throughout the respective bankruptcies of the Plaintiffs, including the bankruptcies of the spouses of co-debtors, non-filers, Eileen Jackson and Paul Duffin, and thereafter to the current time, all Plaintiffs have maintained timely current monthly mortgage payments to their respective mortgage companies[13], without exception or lapse, to wit:

> Karl Peter Horsch and Kimberly Horsch to Wells Fargo;
> Allan Jackson and Eileen Jackson to Wells Fargo;
> Paul Duffin and Theresa Duffin to Wells Fargo and Citifinancial;
> Rhiannon Lindmar to Wells Fargo;

---

[12] Use of the paragraph "¶" symbol references the respective paragraph in the First Amended Complaint.

[13] *See* ¶2, Footnote 2.

Vilma Collier to Green Tree;
Paula Milbourne to JPMorgan
Troy Adams to JPMorgan;
Thomas Kennedy and Sarah Kennedy to BOA and Citifinancial; and
Brad Saltzman and Rebecca Saltzman to Nationstar.

*See* ¶¶ 10, 13, 18, 24, 26, 27, 39, 40

Throughout the respective bankruptcies of the Plaintiffs, including the bankruptcies of the spouses of co-debtors, non-filers, Eileen Jackson and Paul Duffin, Plaintiffs who were in Chapter 13 proceedings, timely made all required Chapter 13 plan payments to the respective assigned Chapter 13 Standing Trustee: *See* ¶¶ 36.f. and 36.g.

None of the Plaintiffs reaffirmed the obligations under and pursuant to the Notes executed by each of the Plaintiffs concomitant with the execution by each Plaintiffs of the Collateral Security agreements – the mortgages – binding each Plaintiffs' residence as collateral for the loan represented by the Note, the latter the evidence of the mortgage debt. *See* 11 U.S.C. § 524(c).

Nonetheless, after their respective discharges in bankruptcy, and Plaintiffs' overall history of maintaining current monthly payments to their respective mortgage companies, Defendants, throughout the Plaintiffs' respective bankruptcies and thereafter to the current time, have failed and refused to report these recurrent, current, monthly payments, reporting, instead NO current monthly payments, NO monthly payment amounts, NO current monthly payment history. This occurs when a Debtor is in bankruptcy and after the Debtor has exited bankruptcy with a discharge without reaffirming the Note. It matters not whether the Debtor has chosen not to reaffirm the Note or, after choosing to reaffirm the Note, the Reaffirmation Agreement is rejected by the Bankruptcy Court. ¶¶ 3, 5, 6, 41

Furthermore, when the non-debtor spouse of a debtor in discharged bankruptcy, such as Paul Duffin and Eileen Jackson, has maintained and continues to maintain a current monthly mortgage payment status with the respective servicer, Defendants intentionally and willfully refuse and fail to report the current monthly mortgage payment of the respective **non-debtor** (also referred to, in bankruptcy parlance, as the "co-debtor") spouse to the CRA's, even though the respective non-debtor spouse has not been in bankruptcy. ¶¶ 6, 41.

Plaintiffs have each and all attempted to achieve an accurate and correct credit report to the CRA's by their respective mortgage companies, Defendants hereto, the furnishers of credit-applicable information. Each and every Defendant, aware of the current payment status of each Plaintiff, nonetheless has refused and continues refuse to makes changes to the CRA's. ¶ 54. *See also* ¶ 54, Footnote 17. *See also Horsch, et al. v. Wells Fargo Home Mortgage, et al.,* U.S.D.C., E.D. Pa. 13-05138 WY, specifically Exhibits "A" and "B", "J" and "R", incorporated herein by reference as if set forth herein at length.

Defendants, in each and every case, failed/fail to differentiate that, in the case of all Plaintiffs, but for Paul Duffin and Eileen Jackson, the mortgage balance was not "$0": the balance on the Note was "$0", but the amount due on the mortgage instrument, was the respective mortgage balance that was reportable prior to bankruptcy, less payments made during bankruptcy and thereafter. ¶ 54

This is compared with the fact that, in each and every case, but for Paul Duffin and Eileen Jackson, the outstanding balance due on the note was "$0.

The great contradiction and contradistinction lies in the hypocritical stance taken by Defendants that: Defendants assert the fiction that payments on a reaffirmed debt **ARE NOT** "voluntary", while payments on a mortgage debt that has not been reaffirmed **ARE** "voluntary".

10

That is sheer nonsense: In the law of life, some degree of sane practicality must govern. The fact/truth of the matter is:

      a.      When a mortgage debt evidenced by the Note is reaffirmed within a bankruptcy, and if current monthly mortgage payments are NOT made, the residence that is collateral for the Note, the collateralization supported by a mortgage, shall end up in a foreclosure action, culminating in a judicial or sheriff's sale of the residence. Defendants all refer to this circumstance as one in which payments are **NOT VOLUNTARY**, but must be made on a current basis until paid off.

      b.      On the other hand, with a mortgage debt the Note of which is discharged by bankruptcy and not reaffirmed, then, if current monthly mortgage payments are NOT made, there now being no enforceable Note, the residence that is collateral and encumbered by the mortgage shall nonetheless still end up in a foreclosure action, culminating in a judicial or sheriff's sale. Defendants all refer to this circumstance as one in which payments are **VOLUNTARY**, and, as such, with the current payment status NOT to be reported.

*See* ¶ 54.n.

The only difference between a. and b., immediately above, is that with a reaffirmation, a judicial and/or sheriff's sale can result in a deficiency balance. ¶ 54. Otherwise, all payments are voluntary: You the mortgagor(s) makes the payments, or does not make the payments. The result is the same with or without a reaffirmation: The Mortgagor(s) keeps the residence or loses the residence.

Each and all of the Defendants have been and are consistently aware of the specific payment histories of each of the discharged Plaintiff, and their spouses as Eileen Jackson and Paul Duffin, and Defendants have had, and still have, the ability to update, correct, amend, the

respective credit reports with the current payment status of the respective Plaintiffs, but have refused. ¶ 54.

At all times relevant to the time of the filing of this Complaint, Defendants have willfully failed and refused to update, correct, and/or amend the respective credit report as to the current payment status of the respective mortgages, even though:

Expanding on the hypocrisy and contradictions of policy and procedure, Defendants, in every case involving every Plaintiff, have provided and continue to provide by mail a monthly mortgage statement to each Plaintiff, advising of the real outstanding balance, advising of the preceding mortgage payment and its application, advising of the next payment amount and date due . These monthly statements contain payment coupons, and provide a statement of "Activity since the last statement". *See* ¶ 54.j. and Exhibit "A".

The *caveat* with the monthly statements, however, is, if in or discharged from bankruptcy, the statement provides that it is "For Information Purposes Only and is being provided as a courtesy should you <u>voluntarily</u> decide to make your loan payments."

The refusal and failure to provide current mortgage payment statuses to the CRA's, that Plaintiffs are current with their required mortgage payments, clearly leads to misunderstanding by existing and prospective credit issuers. Defendants continued and continue to act with the fiction that, regardless of the current mortgage status of the Plaintiffs, regardless if the outstanding balance is "0", with the exception of Paul Duffin and Eileen Jackson, there is no reportable current status, as more fully set forth in ¶¶ 49 and 68 [page 21]:

Each and every Defendant reported to the respective reporting agencies that the respective Plaintiffs were in bankruptcy and that the respective Plaintiffs had been discharged from bankruptcy; Each and every Defendant reported to the respective reporting agencies that

the outstanding balances on the mortgage loans were "0"; Defendants, in each and every case, failed/fail to differentiate that, in the case of all Plaintiffs, but for Paul Duffin and Eileen Jackson, the mortgage balance was not "$0": the balance on the Note was "$0", but the amount due on the mortgage instrument, although *in rem*, was the respective mortgage balance that was reportable prior to bankruptcy, less payments made during bankruptcy and thereafter; nonetheless, the balance to pay the security interest was/is the respective mortgage balance that was reportable prior to bankruptcy, less payments made during bankruptcy and thereafter. ¶ 68 [page 24].

As noted above, the intentional failure and refusal to report accurately the current payment status of these mortgage accounts leads to the obvious conclusion that the Plaintiffs are not entitled to the benefit of a credit report which, if accurate and not incorrect, would tell the credit reviewer that the Plaintiff(s) is/are and has/gave been current with their mortgage obligations. The fiction of the Defendants' credit reporting overwhelmingly leads to the conclusion that the Plaintiffs are not worthy for consideration by a creditor. The difference by and between the apparent creditworthiness or lack thereof is only a successful bankruptcy, with creditworthiness suffering dramatically because of the intentional refusal to actually report that Plaintiffs have engaged in constant, persistent, current mortgage payments. Plaintiffs have all suffered the results of the reported misrepresentations.

*See* ¶¶ 41 – 48.

Plaintiffs, after having received and reviewed their respective credit reports, each and all, by themselves and/or through their duly authorized attorney, requested that the respective credit reporting agency investigate and seek an investigation by the furnisher of the information, and

13

correct the credit reports of the respective plaintiffs. *See McKenzie-Gilyard v. HSBC Bank Nevada, N.A. (In re McKenzie-Gilyard),* 388 B.R. 474 (U.S.B.C., E.D., N.Y. 2007). ¶ 55.

Each and every Plaintiff has sought to achieve a transaction(s) involving credit, whether in the form of home mortgage refinance, modification, automobile purchase, and the like, and each and every Plaintiff has either been denied credit or has been charged excessive rates of interest all stemming directly and proximately from the failure and refusal of each and every Defendant to accurately report current mortgage payments. The effect has been financially devastating on Plaintiffs. ¶ 54, Footnote 6,

All Plaintiffs notified the respective CRA's noticing that the credit reports were inaccurate, in dispute and needed to be corrected. All of these communications were sent by certified mail to each of Transunion, Experian and Equifax, requesting an investigation. ¶¶ 56 - 60, *See also* Exhibit "B". Plaintiffs, Troy Adams, Thomas Kennedy and Sarah Kennedy, and Brad Saltzman and Rebecca Saltzman, used regular mail in their letters to the CRA's. ¶¶ 61, 62 and 63.

Each of these requests for investigation and correction sought corrected reports from the furnishers that the respective Plaintiff is and has been paying his/her/their mortgage obligation on a current monthly basis, in a specific amount each month, and that Plaintiffs are and have been current in their monthly mortgage payment obligations. ¶ 64.

Regardless, after investigation the CRA's have reported back to the Plaintiffs, either directly or through Plaintiff's counsel, the same, similar, or exacerbated reports further diminishing and demeaning the creditability as viewed through the respective "updated" credit reports of the Plaintiff, as provided as responsive to the requests cited above by Plaintiffs or their counsel. ¶ 65.

The final reports of each of the respective CRA's was the result of an investigation by the respective Defendant, each and all of which received the investigation inquiry, forwarding the inquiry to the respective furnisher – Defendants – which, after their own respective investigations, reported back to the respective Plaintiffs through the CRA's that the current mortgage payment status and history will not be reported. It is presumed that the investigations were "reasonable", but only discovery can elicit that information. ¶¶ 66 and 73.

In any event, the failure and refusal of the furnishers of information to recognize and correct the reports as to non-bankruptcy filers, Eileen Jackson and Paul Duffin, certainly eviscerates any argument that may be proffered by Defendants that their reporting was in good faith, diligent, and reasonable. ¶ 67.

Each of the CRA's , upon receipt of the notice of dispute from Plaintiffs, provided each respective Defendant with the notice of the dispute involving the failure to report current monthly mortgage payments. Only discovery will specifically elicit the information necessary to confirm the "notices of dispute" between CRA's and the respective Defendants. ¶ 70 [page 22]

Several of the Defendants, after reasonable investigation, did determine to "delete" any reference to the mortgage in any respect. *See* below for an itemization for each Plaintiff. [14] However, no Defendant agreed that the failure to report the current monthly mortgage payment status is an inaccuracy or incorrect. This is the nucleus of this lawsuit. ¶¶ 75 and 76 [page 22].

In summary, therefore, Plaintiffs have done and completed that which is required of them in disputing the information in the credit reports.

Defendants reacted in one of three ways:

---

[14] Deletion is unacceptable as it fails to report current monthly mortgage payments.

a. Several Defendants, as noted below, deleted from the credit reports of the respective Plaintiffs any mention of the mortgage. In summary, therefore, Plaintiffs have done and completed that which is required of them in disputing the information in the credit reports. ¶ 80 and Footnote 13.

b. All Defendants, aware of the individual disputes, willfully failed and refused to report the current monthly mortgage payments to the respective Plaintiff's credit reports; and

c. Several Defendants wrote specifically to the respective Plaintiffs to explain the Defendants' position as to reporting to the CRA's the respective Plaintiffs' current monthly mortgage payment status.

In any event. *see* ¶ 68 [page 24, *et seq*.], and Exhibits "C" through and including "J" exhibiting that in every case, there were either:

a. Deletions, which fail to correct the inaccuracies;

b. Payment amounts at "0";

c. Actual Payment is "0";

d. Scheduled Payment Amount is "0";

e. Date Closed: [With a date closed, but at the time of the bankruptcy, while nonetheless current];

f. Date of Last Payment is blank;

g. No payment history;

h. *See* Exhibit "D" a rejection letter because of bankruptcy for Eileen Jackson;

i. Verified as correct;

16

j.     No "Last Activity";

k.     First delinquency when bankruptcy was filed, although never delinquent;

l.     From Green Tree for Vilma Collier: "When you filed bankruptcy and did not reaffirm the loan, you discharged your obligation to the loan. Without a reaffirmation of debt, we are prohibited from reporting a loan balance and payment history."

m.     No response;

n.     "O" FICO Score[15]

o.     From Bank of America dated October 4, 2014. telling The Kennedys that reaffirmation is necessary as" Since the credit report currently reports that the mortgages were included in bankruptcy, the creditors do not provide your 12 month history. That is why we need you to reaffirm so we can get the mortgage history to be recorded."
Two letters from Citifinancial explaining why the credit report is what it is.

In no case does any Defendant report that current monthly mortgage payments are being made, and there is no payment history to show current monthly mortgage payments. In every case, current monthly mortgage payments have been maintained by each and every Plaintiff.

¶¶ 69 – 70 [page 28]

Clearly, the current reporting standards are onerous, misrepresentative, and fail to present an honest picture of the Debtors' true creditability and creditworthiness, leading not only to confusion and misunderstanding, but to the exact opposite of the purpose of the FCRA: To present a fair and present representation of a person's credit history. Defendants are perpetuating a fiction.

---

[15] Solely as the result of the credit reporting of Chase, Mr. Adams is being forced to pay 19% on his car loan. Mr. Adams finally had to get financing through Global Lending, after rejection from Police & Fire F.C.U. and Gordon Buick.

Furthermore, within the guise of not wanting to violate 11 U.S.C. § 524, Defendants refuse to report current credit when Plaintiffs do not reaffirm the Notes, appearing at least to this writer, to indicate a coercive tactic to get the Debtor to reaffirm, especially when the report to be made, and not being made, is so positive..

There is absolutely no warranted excuse for precluding non-filing Plaintiffs from reporting such positive credit information to the CRA's.

## VI.    STATEMENT OF THE LAW

The primary issue presented by Plaintiffs is the failure and refusal of the furnishers of credit, Defendants, to (1) report to the CRA's the current monthly mortgage payments made after discharge and pursuant to the existing mortgages, and, (2) report to the CRA's all information as to current monthly mortgage payments and payment history pertinent to co-debtors, non-filers, of spouses who have been discharged from bankruptcy and are and have been current with their respective mortgage payment obligations.

After all, the desired reporting would be factual, accurate, positive, and certainly would assist in providing the promised and earned "fresh start". Now, this failure only has acted and continues to act to exacerbate the financial wounds already suffered by the financial conditions that required these mortgagors to file for bankruptcy protection.

There is absolutely no question that the intentional failure to not report the current and recurrent monthly mortgage payment statuses of both sets of mortgagors (discharged debtors and their respective co-debtor spouses) has been and will continue to be of great adverse impact upon Plaintiffs by the credit reports that do not truthfully exhibit that there are existing mortgages (not Notes, but mortgages) that are being currently maintained. Plaintiff's creditability and

18

creditworthiness must, under current policy, strain to improve without the benefit of the reality of their respective current mortgage payment statuses.

The Motions of all Defendants basically present the same arguments; thus, as noted, this response shall address the communal attempts to deprive Plaintiffs of their cause of action.

*Mortimer v. Bank of America., N.A.,* 2013 U.S. Dist. LEXIS 51877, *21 (N.D. CA, 2013):

"Section 1681s-2(b) establishes the duties of furnishers after notice of a dispute. Section 1681s-2(b). Upon receiving notice of a dispute from a CRA, the furnisher shall conduct an investigation of the disputed information ; (2) review all relevant information provided by the agency; (3) report the results of the investigation to the CRA; (4) if the results of the investigation reveal that the information is incomplete or inaccurate, report those results to all other CRA's to which the person furnished information; ... ."

*See also Giovanni v. Bank of America,* 2013 U.S. Dist. LEXIS 55585 (N.D. CA., 2013). At *13: "The reported information is 'inaccurate or incomplete' within the meaning of the statute if it is 'patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"

Each and every Defendant's Motions justify their respective conformity to the policies and procedures of not revealing that Plaintiffs have maintained required current monthly mortgage payments. Thus, the issue of "actual knowledge" becomes a non-issue. The failure to correct/amend/modify, then, becomes – is inherently - intentional.

*Mortimer* continues: "(5) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after reinvestigation, for purposes of reporting to a consumer reporting agency only, as appropriate, [the furnisher shall] modify, delete, or

19

permanently block reporting of that item or information." As noted in the First Amended Complaint, paragraph 68 [page 24], Wells Fargo deleted reference to its nonetheless current mortgage; Wells Fargo deleted reference to the current mortgage of Rhiannon Lindmar; Bank of America has deleted any reference to the current mortgage of Thomas Kenney and Sarah Kennedy; and Green Tree has deleted any reference to the current mortgage of Brad and Rebecca Saltzman.

However, these Plaintiffs named immediately above continue to maintain current mortgage payments to their respective mortgage companies: Green Tree, Bank of America and Wells Fargo. Deletion is the equivalent of denying the existence and current mortgage payment status of the mortgages, and, therefore, constitutes, lack of truth.

The CRA's have not been instructed to even mark these accounts as "Disputed" with or without explanation. *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1163 (9th Cir. 2009):: The furnishers of credit must tell the CRA's that an account is disputed, "[I]t is the failure to report a bona fide dispute ... that gives rise to a furnisher's liability."

The furnisher Defendants have failed and refused to acknowledge through the CRA's that there is a dispute.

Some background in the law is appropriate: *Mortimer,* at page *21, explicates the duties and obligations of the respective parties: The FCRA was enacted to promote the equitable use of consumer credit information and to ensure fairness and accuracy within the credit reporting system. To achieve this purpose, the FCRA imposes certain duties on the furnishers that provide credit information to CRA's." Furnishers must provide "accurate information" and "correct and update information, and ...provide notice of disputes ... ."

When a consumer disputes the furnisher's reports, that consumer has then the obligation of noticing the furnishers of the dispute through the CRA's. After notice, the furnisher duties to conduct a "reasonable investigation" arise.

Each Plaintiff received their respective credit reports, noticed the fact that either: (1) There was no mention of a mortgage, even though existing and current; or, (2) there was mention of a mortgage(s) that listed no balance due on the mortgage(s) (which Plaintiffs are NOT placing at issue except for Eileen Jackson and Paul Duffin, non-filing co-debtors), and that last activity was normally the date of bankruptcy filing, no last payment no current payment, no payment amounts, *et cetera*. These reports are all AFTER bankruptcy discharge and with the mortgage monthly payment status was current throughout bankruptcy and thereafter.[16] Thus maintaining current payments on their respective mortgages for from four years to seven years still cannot achieve a favorable credit report. Regardless of any argument to the contrary, the FCRA *raison d'etre* cannot stand for such an unfair, discriminatory and unjust conclusion to Plaintiffs maintaining their current mortgage obligations for years.

Plaintiffs assert that they conformed completely and totally to their obligations under the FCRA:

1.     Each and every Plaintiff noticed that their respective credit reports had incorrect and inaccurate information regarding their mortgage payments;

2.     Each and every Plaintiff contacted the respective CRA's advising of the noted discrepancies, and instructed the CRA's to investigate;

---

[16] The practical statistic for Plaintiffs is that three (3) Plaintiffs have been maintaining a current monthly mortgage payment since 2007; two (2) since 2008; two (2) since 2009; and six (6) since 2010.

3	Rach and every CRA notified the respective Defendant of the disputed credit report entry(ies);

4.	Each Defendant investigated the dispute[17],[18], and reported in two ways:

a.	To the CRA's, and

b.	In some instances, directly to the challenging consumer/Plaintiff.

5.	The majority of Plaintiff repeated this process with no success.

The Court can presume that Defendants investigated the disputes by the very nature of the fact that no Defendant denied the mortgage account, and no Defendant has failed and refused to take the current monthly mortgage payment and cash it; and no Defendant has failed to send a monthly mortgage statement reflecting all of the activity of an account to the respective Plaintiff.

There is case law to the extent that such behavior may be a violation of the United States Bankruptcy Code, specifically 11 U.S.C. § 524(a), but Plaintiffs have decided to pursue this cause of action utilizing the FCRA, which does not realize on the specific potential individual issues and limited Class opportunity.. However, *see Russell v. Chase Bank USA, N.A.,* 378 B.R. 735, 2007 WL 4267789, *4 (E.D. N.Y. 2007); *Mc*Kenzie-Gilyard v. HSBC Bank Nevada, N.A., 388 B.R. 474 ( U.S.B.C., E.D. NY 2007, and *In re Puller, 2007* Bankr. LEXIS 2017 (2007 WL 1811209, *7 (U.S.B.C. E.D. NY 21007): *Russell* states: "[A] deliberate refusal to correct information previously supplied to credit reporting agencies for the purpose of coercing (a

---

[17] We know that each Defendant investigated as thee have been responses from all Defendants as to all Plaintiff, but for Rhiannon Lindmar, whose particular situation with respect to the Defendant involvement is not understood and will have to be pursued vis-à-vis discovery.
[18] Without more information available only through discovery are Plaintiffs aware of the specific means of investigation, whether "reasonable" or otherwise. However, the responses from Defendants, through the CRA's, but for those in which responses are also directly to the respective Plaintiff, clearly evidence the investigation.

22

debtor) to repay a discharged debt" is a violation of the discharge injunction of section 524 of the Bankruptcy Code.

In any event, Plaintiffs have performed as required and expected by the FCRA in disputing an item(s) on a credit report.

There is no question as to whether the refusal by Defendants is intentional. It is!

There is no question that the subject credit reports are patently, knowingly, intentionally "patently incorrect", with no effort to report to CRA's information that is accurate that would be substantial assistance to potential creditors in evaluating Plaintiffs' creditability and creditworthiness. Reporting such positive information can in no manner be construed as violating the Bankruptcy Court Discharge Injunction.

Defendants were aware of that which they were reporting; Defendants were and are aware of the current payment status of each of the respective Plaintiffs' mortgage accounts; each Defendant refuses to correct this information; each creditor has failed to instruct the respective CRA's to mark an account as in "Dispute", although the latter would only slightly ameliorate the substantial assault on the credit of persons with clean mortgage payment histories.

Finally, as to damages, they have been asserted with factual backup, and they can be twofold: actual damages and statutory damages. *See Mortimer*, at *23: "The complaint needs at least to give the party some notice as to what her actual damages could possibly be". "The FCRA does not explicitly limit the 'actual damages' recoverable under the statute and Plaintiff does not need to plead her damages with heightened particularity." Citing *Martin v. Asset Acceptance, LLC,* 2012 U.S. Dist. LEXIS 103403 (N.D. Ill., 2012).

In summary, "The FCRA was enacted in order to ensure that 'consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.' The FCRA was prompted by 'congressional concern over abuses in the credit reporting industry.' In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole."

A summary of the applicable law as it invokes the FCRA is available through *Frank Boggio v. USAA Savings Bank,* 696 F.3d 611, 616-618 (6th Cir. 2012)

> "First, FCRA requires a furnisher to 'conduct an investigation with respect to the disputed information.' § 1681s–2(b)(1)(A). We join every circuit to have addressed this duty in holding that the investigation an information furnisher undertakes must be a reasonable one. [Citations omitted.] As several of these circuits agree, the term 'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review. [Citation omitted.] Moreover, anything less than a reasonable inquiry would frustrate Congress's goal to create a system that permits consumers to dispute credit inaccuracies. As the Fourth Circuit reasoned, '[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute— and, ultimately, correct—inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *un* reasonable inquiries by   creditors.' [Citation omitted.] A consumer may show a violation of an information furnisher's duty under §1681s–2(b)(1)(A) by showing that the furnisher's investigation was not reasonable. [Citations omitted.]

> "Second, FCRA requires a furnisher to 'review all relevant information provided by the [CRA] pursuant to [§ ] 1681i(a)(2)." § 1681s–2(b)(1)(B). Alone, this duty is straightforward: a furnisher must review the pertinent information provided to it by a FCRA. However, courts have interpreted this review requirement alongside the investigation requirement in § 1681s–2(b)(1)(A). In particular, how thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."

In Horsch, we know the information immediately available to the Defendants because

Defendants send monthly mortgage statements to the Plaintiffs. We also know that Defendants

24

addressed the specific issue as to reporting current monthly mortgage payments because of their

individual responses.

> "Third, FCRA requires a furnisher to 'report the results of [its] investigation to the [CRA]." § 1681s–2(b)(1)(C). After conducting its reasonable investigation and reviewing all relevant information provided by a CRA, a furnisher must report back its findings about a customer's information to the CRA that originally provided notice of the dispute. Unlike the following two duties, this reporting duty requires a furnisher to respond to a CRA regarding the results of the furnisher's investigation, irrespective of the outcome of its investigation."

We know that the furnisher did report the respective results of the investigation because

of the explanations accompanying some of the reports, and because of the deletions of others.

We are not in possession of the specific reports provided the CRA, however.

> "Fourth, FCRA requires that 'if the investigation finds that the information is incomplete or inaccurate,' then the furnisher must 'report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." § 1681s–2(b)(1)(D). Other courts of appeals have explored the scope of the trigger under § 1681s–2(b)(1)(D) that 'the investigation finds that the information is incomplete or inaccurate.' For example, false information about a consumer is clearly inaccurate, and so failing to report the discovery of false consumer information to all CRAs would violate § 1681s–2(b)(1)(D). In addition, courts have held that § 1681s–2(b)(1)(D) is violated if a report of an investigation, although it contains correct information, nevertheless 'provides information in such a manner as to create a materially misleading impression.' [Citation omitted.]

We know that the reports to the various CRA's from Defendants have been consistent,

universally deleted or inaccurately negative.

> "Fifth, a furnisher must either 'modify,' 'delete', or 'permanently block reporting of' information that it finds upon investigation to be 'inaccurate or incomplete,' or that ' 'cannot be verified after any reinvestigation.' § 1681s–2(b)(1)(E). Inasmuch as the scope of this duty is determined by reference to inaccurate or incomplete information, the duty equally extends to the discovery of both inaccurate or incomplete consumer information and to the discovery of consumer information that is materially misleading. In addition, a furnisher has a duty to modify, delete, or block its original reporting if it discovers, upon investigation, that it can no longer verify the consumer information it originally supplied to a CRA.

This does not apply, because the information reported to the CRA's is greatly disparate from the monthly statements provided by Defendants; thus, Defendants adamantly stick to their industry standard of intentionally issuing inaccurate reports.

> "In summary, we conclude that FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s–2(b). A consumer who demonstrates that a furnisher was negligent in breaching one of these duties with respect to that consumer's disputed information is entitled to actual damages under § 1681 $o$; moreover, if a consumer can establish that a furnisher willfully violated one of its duties, then under § 1681n the consumer may recover actual or statutory damages, as well as punitive damages. Costs and reasonable attorney's fees are also authorized under both §§ 1681n and 1681$o$."

Defendants have each and all well-demonstrated that Defendants have failed to satisfy more than one and possibly all of the five duties prescribed by the law.

## VI.    CONCLUSION

Plaintiffs believe and therefore assert that they have set forth a viable cause of action against Defendants in violation of the Fair Credit Reporting Act, and ask this Honorable Court deny the Motions.  In the alternative, if the Court believes that the First Amended Complaint is capable of clarification and to become a viable cause of action, Plaintiffs ask this Honorable Court grant Plaintiffs leave to file a Second Amended Complaint pursuant to the District Court's liberal policy regarding amendment to work out a viable cause of action.

**[Intentionally Left Blank]**

The Defendants' interpretation and the policy derived therefrom is onerous, unfair and certainly against the intent of Congress in its foresight in seeking protection of consumers in the credit reporting industry.

Respectfully submitted:

Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg, LLC
65 West Street Road, Suite A-204
Warminster, PA 18974
Tel. (215) 957-6411
Fax. (215) 957-9140
mlawoffice@aol.com

October 10, 2014