# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARL PETER HORSCH and<br>KIMBERLY HORSCH, H/W, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 14-2638 |
| WELLS FARGO HOME MORTGAGE,<br>A DIVISION OF WELLS FARGO<br>BANK, N.A.; WELLS FARGO BANK,<br>N.A.; CITIMORTGAGE, INC. T/A<br>CITIFINANCIAL; GREENTREE<br>SERVICING, LLC; JP MORGAN CHASE<br>BANK; BANK OF AMERICA CORPORATION;<br>BANK OF AMERICA N.A.; and NATIONSTAR<br>MORTGAGE, LLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

YOHN, J.                                                      March 24, 2015

This case asks how, under the Fair Credit Reporting Act, a mortgagee must account for a mortgagor who has discharged his personal debt under the Note in bankruptcy, yet who continues making payments on the Mortgage in an effort to stave off foreclosure of the mortgaged property. Speaking in broad strokes, plaintiffs—six married couples and three individuals—took out mortgages serviced by the various financial institution defendants in the usual form of a Note and Mortgage. They then went through the bankruptcy process under Chapter 7 or Chapter 13. The parties agree that the bankruptcy discharges meant that plaintiffs no longer had in personam liability for the borrowed amounts set forth in the Notes, but defendants retained the in rem right to foreclose on the Mortgage of the properties if plaintiffs

Case 2:14-cv-02638-MAK   Document 69   Filed 03/25/15   Page 2 of 26


failed to keep up their monthly payments.[1]  In other words, upon lack of the monthly payment, defendants could foreclose on and sell plaintiffs' properties, but they could not sue plaintiffs for any shortfall between the sale proceeds and the amounts borrowed.

Plaintiffs continued to make their monthly mortgage payments on schedule, though they found that any post-bankruptcy payments were not reflected on their credit reports—rather, these reports indicated only that plaintiffs owed no money ("zero balances") on these accounts, because defendants consider such payments to be voluntary once personal liability on the Note has been removed.

Two putative classes of plaintiffs assert that this practice constitutes either a willful or negligent violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  The first, larger class consists of those borrowers who declared bankruptcy (the "debtor" plaintiffs). The second, smaller class, consists of certain of the borrowers' spouses, who were co-debtors on the Mortgages but who did not themselves declare bankruptcy (the "co-debtor" plaintiffs).  All plaintiffs claim that defendants have painted an inaccurate or incomplete picture of their credit history, which they allege has made it more expensive or impossible to apply for other credit. They further argue that, at a minimum, defendants should have flagged the relevant credit report

---

[1] As the Supreme Court explained in *Johnson v. Home State Bank*:

> A mortgage is an interest in real property that secures a creditor's right to repayment.  But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally.  *See* 3 R. Powell, The Law of Real Property ¶ 467 (1990).  A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation.  *See* 11 U.S.C. § 727.  However, such a discharge extinguishes *only* "the personal liability of the debtor."  11 U.S.C. § 524(a)(1). Codifying the rule of *Long v. Bullard*, 117 U.S. 617 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.

501 U.S. 78, 82-83 (1991).

entries as under dispute.  They also allege that defendants should report the current monthly payments on the Mortgages and their payment history.  Defendants respond that their reporting is accurate, as well as in compliance with instructions provided by federal regulators and rulings made by the only federal courts to have weighed in on the issue.  Defendants' arguments must prevail on several grounds with respect to the debtor plaintiffs, and since it would be futile to allow further amendment and refiling, I will dismiss those claims with prejudice.  But the co-debtor plaintiffs have made out a plausible claim under FCRA, so their portion of this case must be allowed to proceed.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Because this case involves fifteen plaintiffs and essentially six defendants, a full recounting of all the facts would be overly complicated.  I will instead focus on one representative dispute and then discuss relevant differences between the others as necessary.

Vilma Collier, a resident of Vineland, New Jersey, took out a mortgage serviced by Green Tree Servicing LLC.[3]  Subsequently, on December 21, 2011, Collier filed for bankruptcy under Chapter 7 in the U.S. Bankruptcy Court for the District of New Jersey, and she received a discharge on March 30, 2012.[4]  Collier continued to make her monthly mortgage payments to

---

[2] This account accepts as true all factual allegations made in plaintiffs' first amended complaint ("FAC") (Doc. No. 43).  *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  As plaintiffs note in their response, the amended complaint contains numbering errors, so in the interest of clarity, I will include page and paragraph when citing that document.

[3] Plaintiffs refer to the institution as Greentree, but I will defer to defendant's own usage.

[4] Attached to this discharge was an "Explanation of Bankruptcy Discharge in a Joint Chapter 7 Case," which states:

**<u>Collection of Discharged Debts Prohibited</u>**

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor.  A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Green Tree after the bankruptcy, which caused Green Tree not to foreclose on the property, but she discovered that these payments were not reflected on her credit report—rather, the account status was reported as "Discharged through Bankruptcy Chapter 7 / Never Late" and the balance was reported as $0 (a so-called "zero balance").[5]  Collier disputed this record with the consumer reporting agencies, which then notified Green Tree.  By letter on June 12, 2014, Green Tree explained its actions as follows:

> Our records indicate that you filed Chapter 7 bankruptcy . . . .  The bankruptcy was discharged without reaffirmation of the loan.  When you filed bankruptcy and did not reaffirm the loan, you discharged your obligation to the loan.  Without a reaffirmation of debt, we are prohibited from reporting a loan balance and payment history.  Your credit report will continue to indicate this loan as a bankruptcy account.  When the loan has been paid in full we will file a[] . . . form stating the loan was paid as agreed and is closed.[6]

Here, "reaffirmation" means the procedure of re-establishing personal liability on a Note after such liability has been discharged in bankruptcy—a move that courts disfavor, according to plaintiffs.[7]  Collier did not reaffirm the loan, and she asserts that her creditworthiness has since

---

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

**Debts That are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed.

Order Discharging Debtor, *In re Collier*, No. 11-46052-JHW (Bankr. D.N.J. Mar. 30, 2012); *see also* Bankruptcy Form 18J, *available at* http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx.

[5] FAC Ex. G (Doc. No. 43-1) at 50.

[6] *Id.* at 38.

[7] *See, e.g.*, *In re Price*, 370 F.3d 362, 378 (3d Cir. 2004) ("[R]eaffirmation is viewed as a classic evil in bankruptcy law, and is dealt with in the Code so as not to exalt or enable it, but, rather, so as to regulate and scrutinize it, in light of its misuse.").

continued to suffer as a result of Green Tree's reporting policy, which has led to her either being refused credit outright or being forced to take on credit only at a higher interest rate.

The other debtor plaintiffs' accounts differ in small but important ways from Collier's. When plaintiffs Karl Peter Horsch and Kimberly Ann Horsch disputed the zero balance on their credit report, their mortgage servicer—defendant Wells Fargo—agreed to remove any mention of the account from future credit reports. Likewise, defendant Nationstar Mortgage agreed to delete the allegedly incorrect zero balance from the credit report of plaintiffs Brad Saltzman and Rebecca Saltzman, as did defendants Bank of America and CitiMortgage when a dispute was raised by plaintiffs Thomas Kennedy and Sarah Kennedy. By contrast, when plaintiff Rhiannon Lindmar disputed her zero balance with Wells Fargo, the record was deleted from the records of one credit reporting agency (Transunion), but not another (Equifax). It is unclear from the pleadings what if anything resulted when Paula Milbourne filed her dispute with JPMorgan Chase Bank.

The fact pattern is further complicated by the second putative class of plaintiffs, represented by co-debtors Eileen Jackson and Paul Duffin.[8] These plaintiffs took out mortgages with their spouses, but only those spouses declared bankruptcy. Yet Eileen Jacksons' credit report indicates that she herself had gone through bankruptcy,[9] and Paul Duffins' credit report (from Equifax) shows a zero balance. The co-debtors therefore claim that their credit reports contain inaccurate or incomplete information through no fault of their own, likewise leading to difficulty finding credit, or being able to take out only more expensive credit.

---

[8] JPMorgan correctly notes that, according to the pleadings, Wanda Adams was not a debtor or a co-debtor, and therefore she does not fall within either of the putative classes of plaintiffs. JPMorgan's Br. 20-21. Moreover, she was not named as a plaintiff in the caption of the case or referred to in the body of the amended complaint (except for being mentioned in the section on the parties). *Id.*; FAC 5-6 ¶¶ 24-25.

[9] *See* FAC Ex. D (Doc. No. 43-1) at 18 (letter from Wells Fargo to Eileen Jackson denying her a home equity loan because of "[b]ankruptcy without re-established credit"); *id.* at 22 (letter from Experian to Eileen Jackson's attorney stating that "the disputed account is appearing just as you stated on Mrs. Jackson's personal credit report").

The procedural history of this case adds yet another wrinkle.  On September 3, 2013, the Horschs, Jacksons, Duffins, and Lindmar filed suit against Wells Fargo and CitiMortgage in Civil Action No. 13-5138, alleging essentially the same facts and bringing a claim under FCRA—specifically, 15 U.S.C. § 1681s-2(a), which imposes a duty to provide accurate credit information.[10]  Plaintiffs also sought civil contempt sanctions, as they claimed that the mortgage servicers' credit reporting violated their bankruptcy discharge injunctions.  Defendants moved to dismiss on the grounds that, *inter alia*, § 1681s-2(a) does not create a private right of action.  On November 25, 2013, plaintiffs filed an amended complaint, this time bringing a claim under § 1681s-2(b), which imposes a duty to investigate credit reporting disputes, as well as raising violations of the bankruptcy discharge injunction and various state statutory and common law causes of action.  Defendants again moved to dismiss, and on January 28, 2014, plaintiffs voluntarily dismissed their claims.

On May 8, 2014, the full, current set of plaintiffs filed their original complaint in this case, again claiming violations of § 1681s-2(b), the bankruptcy discharge injunctions, the "automatic stay" provisions of the bankruptcy code, and several common law causes of action. Defendants moved to dismiss, and on September 2, 2014, plaintiffs filed an amended complaint, which brings a claim under § 1681s-2(b) alone.  Defendants moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6), plaintiffs opposed, and defendants replied.  On January 7, 2015, I ordered supplemental briefing from the parties on how the Third Circuit's decision in *Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014), may apply to plaintiffs' claims. Those briefs having been filed and considered, the motions are now ready for review.

---

[10] *See Horsch et al. v. Wells Fargo et al.*, 2:13-cv-5138-WY (E.D. Pa. Sept. 3, 2013).

6

## II.    STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The complaint must contain sufficient factual matter to be plausible on its face.  *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient.  *Id.*  Therefore, to survive a motion to dismiss, plaintiffs must allege facts sufficient to have "nudged their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

## III.    DISCUSSION

All plaintiffs have filed suit under 15 U.S.C. § 1681s-2(b), a provision of FCRA that regulates how the furnishers of credit information must respond when they are given notice of a dispute over consumer credit records.  Section 1681s-2(b) provides, in relevant part:

> (1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> > (A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). If a furnisher fails to comply with these requirements, then § 1681n and § 1681o "authorize[] consumers to bring suit for damages caused by a furnisher's . . . breach" when that breach is willful or negligent, respectively. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014). First, however, FCRA provides that a consumer who disputes an item on his credit reports must notify a CRA, which must in turn give notice to the furnisher that provided the disputed credit information. To succeed in a suit arising under § 1681s-2(b), therefore, "a plaintiff must prove (1) that he notified a [CRA] of the dispute under § 1681i, (2) that the [CRA] notified the party who furnished the information . . . and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." *Taggart v. Norwest Mortgage,*

*Inc.*, No. CIV.A. 09-1281, 2010 WL 114946, at *9 (E.D. Pa. Jan. 11, 2010), *aff'd*, 539 F. App'x 42 (3d Cir. 2013).

CitiMortgage and JPMorgan assert at the outset that certain plaintiffs failed to plead that they ever notified a CRA about their disputed information, undermining any claim they may have under FCRA.  Specifically, CitiMortgage argues that no such allegation was made regarding Paul Duffin, and JPMorgan argues the same for Wanda Adams (a non-party).  It is true that the complaint specifically alleges that the Duffins notified the CRAs only about their dispute with Wells Fargo, and that only Troy (not Wanda) Adams notified the CRAs about his dispute with JPMorgan.  *See* First Am. Compl. ("FAC") 18 ¶ 56, 20 ¶ 61.  But the amended complaint also sets out that "Plaintiffs, after having received and reviewed their respective credit reports, *each and all* . . . requested that the respective [CRA] investigate and seek an investigation by the furnisher of the information, and correct the credit reports of the respective plaintiffs."  FAC 18 ¶ 55 (emphasis added).  Plaintiffs further plead that "[e]ach of the CRA's, upon receipt of the notice of dispute from Plaintiffs, provided *each* respective Defendant with the notice of the dispute involving the failure to report current monthly mortgage payments."  FAC 22 ¶ 70 (emphasis added).  The court is obliged to accept plaintiffs' factual allegations as true at this stage, so I will assume for the purposes of this motion that each plaintiff notified the CRAs and that the CRAs notified each defendant.  The case thus turns on *Taggart*'s third prong: whether "the party who furnished the information failed to investigate or rectify the disputed charge."  *Taggart*, 2010 WL 114946, at *9.

### A.     Defendants' Duty to Investigate

Upon receiving notice from a CRA that a consumer has disputed an entry on his credit report, the furnisher responsible must "conduct an investigation with respect to the disputed

information."  § 1681s-2(b)(1)(A).  In 2011, the Third Circuit held that not just any investigation

will meet this requirement—rather, an investigation must be "reasonable" to satisfy FCRA.

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).  More recently, the

Third Circuit clarified that "a reasonable procedure is one 'that a reasonably prudent person

would undertake under the circumstances,'" and that in weighing the reasonableness of an

investigation, "the factfinder must balance 'the potential harm from inaccuracy against the

burden of safeguarding against such inaccuracy.'"  *Seamans*, 744 F.3d at 864-65 (quoting *Cortez*

*v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)).  The court cautioned that this issue "is

normally a question for trial unless the reasonableness or unreasonableness of the procedures is

beyond question."  *Id.* (internal quotation marks omitted).  But that is precisely the case here,

because plaintiffs concede that defendants' investigations were reasonable.  *See* FAC 22 ¶ 73

("[I]t is believed and therefore averred that each respective Defendant, upon notice of the dispute

from the CRA's performed a 'reasonable' investigation, and reported to the respective CRA's the

results of that investigation.").

   According to defendants, this admission ends the case.  *See, e.g.*, Wells Fargo's Reply Br.

4 ("This concession, standing alone, mandates dismissal.").  In essence, defendants argue that

§ 1681s-2(b) imposes a duty to investigate reasonably and that plaintiffs undermine their case by

admitting defendants' investigations were reasonable.  But the duty to investigate is only part of

what § 1681s-2(b) requires.  Section 1681s-2(b)(1)(E), by contrast, provides that "if an item of

information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified

after any reinvestigation," then the furnisher shall "promptly—(i) modify that item of

information; (ii) delete that item of information; or (iii) permanently block the reporting of that

item of information."  That requirement is what the court in *Taggart* referred to as the furnishers'

duty to "rectify the disputed charge." *Taggart*, 2010 WL 114946, at *9; *see also Seamans*, 744

F.3d at 866 (examining "investigative procedures" and "corrective protocols"). Admittedly, "[a]

furnisher is not required to uncover and correct *all* inaccuracies on the consumer's credit report.

Rather, a furnisher is required to correct only those inaccuracies it discovers during its

reasonable investigation." *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012).

But this means plaintiffs can concede that defendants conducted reasonable investigations

without conceding that defendants fulfilled their duty to correct the inaccuracies they discovered.

Indeed, plaintiffs allege that their credit reports were inaccurate or incomplete, and they claim

that defendants failed to rectify the errors. So the court's inquiry must continue.

### B.     Were Debtor Plaintiffs' Reports Inaccurate or Incomplete Under FCRA?

The debtor plaintiffs claim that their credit reports were inaccurate or incomplete because

they did not reflect any payments made to their mortgage servicers after the Notes were

discharged in bankruptcy.[11] Thus, they argue that defendants had a duty to rectify under

§ 1681s-2(b). Defendants respond in two ways. First, they argue that reporting "zero balances"

is accurate, given that plaintiffs have cast off their personal liability—that is, plaintiffs

technically owe nothing more on those accounts. Second, they assert that § 1681s-2(b) speaks

only to rectifying factual inaccuracies, not legal inaccuracies, and that if the way they report on

the accounts is somehow inaccurate, it falls into the latter category. While this first argument is

sound, the second cannot be squared with Third Circuit caselaw.

#### 1.     *The accuracy of reporting zero balances*

Defendants cite several cases for the proposition that it is accurate to report a zero

balance after the Note has been discharged in bankruptcy. The most on point is *Schueller v.*

---

[11] *See, e.g.*, FAC Ex. G (Doc. No. 43-1) at 50 (May 15, 2014 credit report for Collier, in which the Green Tree account lists the "Recent balance" as "$0 / paid as of Mar 2012" and the "Monthly payment" as "Not reported").

*Wells Fargo & Co.*, 559 F. App'x 733, 734 (10th Cir. 2014) (nonprecedential), *cert. denied*, 135 S. Ct. 275 (2014).  There, as here, plaintiff discharged his Note in bankruptcy but continued making payments to his mortgage servicer, Wells Fargo, in order to prevent foreclosure of the mortgage on the property.  These payments were not reflected on plaintiff's credit report—which instead reported a zero balance on the mortgage—so plaintiff sued Wells Fargo for violating § 1681s-2(b).  The district court dismissed plaintiff's FCRA claim, and the Tenth Circuit affirmed, writing:

> [Schueller] says the credit report should not have reflected that his account was closed and had a zero balance due, and should have included the fact that he made payments after [bankruptcy].  Wells Fargo responds that it would have been inaccurate and misleading to report that Mr. Schueller's loan balance remained outstanding; thus, it reported that the account was closed and had a zero balance due. . . .  Mr. Schueller has cited no authority requiring Wells Fargo to report his post-bankruptcy mortgage payments.  Under these circumstances, we conclude that Mr. Schueller has not carried his burden of showing that the information Wells Fargo furnished was inaccurate or incomplete, nor has he shown that the information about his home loan debt and bankruptcy was materially misleading.

*Id.* at 737 (citations omitted).  In other words, the court agreed that Schueller's making payments on the mortgage to prevent foreclosure did not mean that he truly owed anything on the discharged account.  Reporting a "zero balance" was, therefore, accurate and complete.  I agree with this reasoning.  Here, defendants assert that plaintiffs—lacking personal liability—are in the same position.  That is why defendants describe any payments made by plaintiffs as voluntary, and it is why they argue that it is accurate to report zero balances on the discharged mortgages.

Plaintiffs do not offer a convincing response.  They contend only that "the balance on the Note was $0, but the amount due on the mortgage instrument, although *in rem*, was the respective mortgage balance that was reportable prior to bankruptcy, less payments made during bankruptcy and thereafter."  FAC 15 ¶ 54(c).  But by acknowledging that the amount due on the mortgage is *in rem*, plaintiffs concede the central point: in the eyes of the law, any future action

12

to collect on the debt would be against the property, not the property holder.  *See Black's Law Dictionary* 700 (8th ed. 2005) (defining "judgment in rem" as "[a] judgment that determines the status or condition of property and that operates directly on the property itself.").  The debt should not be included on the borrower's credit report, therefore, because a person's credit report by definition provides information about the debts owed by that person.[12]  Thus, although I am not bound by the Tenth Circuit's decision in *Schueller*, I see no flaws in its reasoning that would lead me to take a different path.  The Federal Trade Commission's guidance is also in agreement, stating that "[a] consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt."  16 C.F.R. 600 app. § 607(b)(6) (2010).  Moreover, plaintiffs cite no authority to the contrary.  I therefore conclude that it is accurate to report zero balances on these accounts after the Notes are discharged in bankruptcy.

### 2.    *Factual inaccuracy versus legal inaccuracy*

Defendants further assert that even if their reporting were not accurate, § 1681s-2(b) penalizes only inaccuracies of fact, not legal interpretation, relying largely on *Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010).  There, the court held that "a plaintiff's required showing [under § 1681s-2(b)] is *factual* inaccuracy, rather than the existence of disputed legal questions. . . . [F]urnishers are 'neither qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a court of law.'"  *Id.* at 38 (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)).  Defendants likewise cite *Van Veen*, 844 F. Supp. 2d 599, which itself relied on *Chiang*.  Defendants argue that the debate over how to report a post-bankruptcy mortgage is just the kind of question properly left to a court of law, and that

---

[12] *See, e.g.*, Consumer Financial Protection Bureau, *What is a Credit Report?*, Ask CFPB (Feb. 27, 2014), http://www.consumerfinance.gov/askcfpb/309/what-is-a-credit-report.html ("A credit report contains information about *your* credit—and some bill repayment history—and the status of *your* credit accounts.") (emphases added).

their decision to report zero balances on those mortgages, therefore, cannot trigger liability under § 1681s-2(b).

Since *Chiang* was decided, however, the Third Circuit has put forward its own interpretation of FCRA's standards for accuracy and completeness.  In *Seamans*, plaintiff disputed the reporting of a student loan he had taken out many years earlier while attending Temple University.  After receiving notice, Temple conducted an investigation and complied with part of plaintiff's request, but Temple would not make certain other changes and refused to note on the credit report that the entry at issue was under dispute.  *Seamans*, 744 F.3d at 858-59. Plaintiff therefore filed suit under § 1681s-2(b), claiming both that defendant failed to conduct a reasonable investigation and that defendant failed to rectify inaccurate or incomplete information.  The district court granted summary judgment in favor of defendant, finding in part that the information furnished by Temple was not "patently incorrect" and thus could not give rise to liability for failure to rectify that information.  *Seamans v. Temple Univ.*, 901 F. Supp. 2d 584, 598 (E.D. Pa. 2012) (quoting *Schweitzer v. Equifax Information Solutions LLC*, 441 F. App'x 896, 902 (3d Cir. 2011)).  The Third Circuit reversed, clarifying what constitutes incomplete or inaccurate information:

> The meaning of "completeness" and "accuracy" in the specific context of a furnisher's duties under FCRA is also a matter of first impression in this Court.  It is not seriously debated, however, that factually incorrect information is "inaccurate" for purposes of FCRA.  And we agree with the three Courts of Appeals to have considered the question that *even if the information is technically correct, it may nonetheless be inaccurate* if, through omission, it "create[s] a materially misleading impression." Whether technically accurate information was "'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect'" is generally a question to be submitted to the jury.

*Seamans*, 744 F.3d at 865 (emphasis added) (citations omitted).  The court therefore found that genuine issues of material fact existed as to whether the reported information was inaccurate.

14

As a consequence, the *Chiang* and *Seamans* standards produce different outcomes. Under the former, only "factual inaccuracy" triggers the duty to rectify in § 1681s-2(b).  *Chiang*, 595 F.3d at 38.  Under the latter, "technically correct" information can be inaccurate for the purposes of FCRA so long as, by omission, the information creates a "materially misleading impression."  *Seamans*, 744 F.3d at 865.  Because *Seamans* controls here, the relevant question is whether defendants have created a materially misleading impression by reporting zero balances on plaintiffs' accounts while omitting records of ongoing mortgage payments—not merely whether it is true that a zero balance exists once a Note has been discharged in bankruptcy.

> 3.    *Applying the* Seamans *standard to debtor plaintiffs' claims*

To determine whether the disputed credit report entries here are materially misleading under *Seamans*, I look to what so far is the only district court opinion within this circuit to interpret the *Seamans* standard: *Hillis v. Trans Union, LLC*, No. 2:13-CV-02203, 2014 WL 2581094 (E.D. Pa. June 10, 2014).  There, plaintiff and his wife had taken out a loan to purchase a car in 2004, but the two divorced in 2007.  Plaintiff's ex-wife was awarded possession of the car in the proceedings, and the divorce decree required her to pay off the balance of the loan and indemnify her ex-husband in the event that she failed to do so.  Plaintiff subsequently discovered that the car loan appeared on his credit report as a delinquent account, and when he applied for a credit-limit increase from his bank, he was rejected based in part on that credit report.  In response, plaintiff filed suit against the CRAs and Santander bank—which had acquired the car loan and refused to modify its reporting—under § 1681s-2(b).  The court applied *Seamans* and held that "[t]he information about the Car Loan that Santander provided to the credit reporting agencies was . . . 'technically accurate.'  But this information was not as complete as it could

have been." *Id.* at *4 (quoting *Seamans*, 744 F.3d at 865).  Based in part on this conclusion, the

court denied summary judgment for Santander.

  If "as complete as it could [be]" is read as "contains as much information as the space can

hold," then defendants' reporting here would fail the test, as they no doubt are capable of

providing additional information about plaintiffs' post-bankruptcy payments.  In that spirit,

plaintiffs point to language in *Seamans* calling on furnishers to provide "*more* information rather

than *less*."  *See* Pls.' Supplemental Br. 10 (quoting *Seamans*, 744 F.3d at 862).  But a nuanced

interpretation of the *Seamans* test would take into account more than merely space constraints.

Here, defendants report only zero balances on the post-bankruptcy Notes not just because that is

what the relevant federal regulator has advised, *see* Part III.C.2.a *infra*, but also because

reporting any post-bankruptcy payments would violate the injunctions that discharged those

same Notes in bankruptcy.  *See, e.g.*, *In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005)

(holding that furnishers of credit information may be in violation of a bankruptcy discharge

injunction unless "a debt discharged in bankruptcy [is] reported to a credit reporting agency with

the notation 'Discharged in bankruptcy' and with a zero balance due.").  In other words,

including more information about the post-bankruptcy accounts would expose defendants to the

risk of future contempt actions.  *See In re Joubert*, 411 F.3d 452 (3d Cir. 2005).  As a

consequence, the credit report entries at issue here are as complete as they could be.  I therefore

conclude that the debtor plaintiffs have not made a plausible claim that the information furnished

by defendants was inaccurate or incomplete—even under the broad standard set out in *Seamans*.

Defendants therefore had no duty to rectify this information, so the claims of these plaintiffs

cannot survive a motion to dismiss.

**C.      Additional Grounds for Dismissing Debtor Plaintiffs' Claims**

Even if it were considered inaccurate or incomplete to report only zero balances on post-bankruptcy mortgages, the debtor plaintiffs' claims would still fail on other grounds.

1.      *Two defendants satisfied their duty to rectify*

FCRA provides that when furnishers find they have provided inaccurate or incomplete information to the CRAs, they are required to report those findings "to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis."  15 U.S.C. § 1681s-2(b)(1)(D).  Similarly, if the information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," furnishers have three options under FCRA: "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."  *Id.* § 1681s-2(b)(1)(E).  Here, plaintiffs have alleged that two defendants—Bank of America and Nationstar—did delete the zero balance accounts from all of the relevant plaintiffs' credit reports after receiving notices of dispute.  *See* FAC 27 ¶ 68(i) (credit report of Thomas and Sarah Kennedy); FAC 28 ¶ 68(j) (credit report of Brad and Rebecca Saltzman).[13]  Thus, even if the information at issue were inaccurate or incomplete, plaintiffs' claims would still have to be dismissed against Bank of America and Nationstar, as those defendants satisfied any possible duty to rectify under § 1681s-2(b).

2.      *Debtor plaintiffs have not made out a claim for willfulness or negligence*

FCRA does not hold furnishers strictly liable for failing to investigate and rectify disputed credit information.  Rather, only willful or negligent violations will expose a furnisher to civil liability.  *See* § 1681n (willful noncompliance); § 1681o (negligent noncompliance).

---

[13] Paragraph 68(j) is mislabeled as a second 68(i) in the amended complaint.

Willful noncompliance can result in statutory penalties of up to $1,000 per violation, as well as punitive damages.  § 1681n(a)(1)-(3).  A plaintiff alleging negligent noncompliance can recover only actual damages.  § 1681o(a)(1)-(2).  Here, plaintiffs have alleged that defendants' violations of § 1681s-2(b)—in failing to rectify the misleading zero-balance entries or at least to mark them as disputed—were done willfully or, in the alternative, negligently.  *See* FAC 37 ¶¶ 109-10.

a.    Willfulness

In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court directly addressed the question of what constitutes willfulness under FCRA.  Though the decision held that willful violations could include either knowing or reckless conduct, the Court also determined that acting in accord with judicial opinions or federal agency guidance could not give rise to a knowing or reckless FCRA violation:

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator.  Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts, whatever their subjective intent may have been.

*Id.* at 70 n.20.  Indeed, the Third Circuit has more recently held that where a plaintiff has pointed to no federal court of appeal decisions or authoritative federal agency guidance that could put the defendant "on notice" that its interpretation at issue was incorrect, a district court should reject a claim of willfulness at the motion to dismiss stage.  *See Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377-78 (3d Cir. 2012).

Here, plaintiffs cite no federal judicial decisions—whether from courts of appeals or district courts—that have found it inaccurate or improper to report a zero balance on post-bankruptcy accounts.  Likewise, plaintiffs have pointed to no guidance from the relevant federal regulators that would have warned defendants against reporting zero balances.  Defendants, by

18

contrast, have found exactly these kinds of authorities to support the practice of reporting zero

balances.  They point to guidance from the Federal Trade Commission.  *See* 16 C.F.R. 600 app. §

607(b)(6) (2010) ("A consumer report may include an account that was discharged in bankruptcy

(as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that

the consumer is no longer liable for the discharged debt.").  They cite a nonprecedential opinion

from the Tenth Circuit where, on facts similar to those presented here, the court held that

reporting a zero balance did not violate FCRA.  *See Schueller*, 559 F. App'x 733.  And they note

several district and bankruptcy court decisions making substantially similar points.  *See, e.g.*,

*Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 57856, at *7 (N.D. Cal. Jan. 3,

2013) ("To avoid presenting a misleading picture, the creditor must also report that the account

was discharged through the bankruptcy and the outstanding balance on that account is zero.").

Under *Safeco*, therefore, these authorities refute the claim that defendants willfully violated

FCRA by reporting only zero balances on the post-bankruptcy accounts.

b.      Negligence

Plaintiffs argue in the alternative that defendants have violated § 1681s-2(b) negligently.

Furnishers who fail to follow FCRA out of negligence are liable for any actual damages that

result, as well as attorney fees and costs.  § 1681o.  Plaintiffs offer two theories for how

defendants were negligent.  First, they claim that defendants failed to at least mark the credit

report entries at issue as disputed (a "failure to flag").  Second, they claim that defendants failed

to update the entries to reflect their post-bankruptcy mortgage payments (a "failure to correct").

i.      *Failure to flag*

Plaintiffs argue that, after receiving notice from the CRAs, defendants were obliged

under FCRA to "at least note the fact that there is a 'dispute'" regarding the zero balance entries.

19

*See* FAC 38 ¶ 111(b).[14]  Again, *Seamans* provides support for plaintiffs' position: the Third

Circuit held that "a private cause of action arises under 15 U.S.C. § 1681s-2(b) when, having

received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to

report that the claim is disputed."  *Seamans*, 744 F.3d at 867.  Plaintiffs' claim could succeed,

therefore, if the dispute here is "potentially meritorious" or "bona fide."  *Id.* at 867 n.11.

What it means for a dispute to be bona fide is an unsettled question, but the Third Circuit

has instructed that "the furnisher . . . is in the best position to determine" whether or not it is so.

*Id.*  Perhaps unsurprisingly, all of the defendants argue in their supplemental briefs on *Seamans*

that plaintiffs' disputes are neither bona fide nor potentially meritorious.  *See* Doc. Nos. 64-68.

For one, defendants reiterate that the administrative and judicial authorities that have weighed in

on the issue have all stated that discharged notes should be reported as having a zero balance.

Defendants further assert that they cannot comply with plaintiffs' requests without violating the

bankruptcy injunctions that discharged the notes at issue in the first place.  *See, e.g.*, *In re*

*Helmes*, 336 B.R. at 107.  Simply put, not only are defendants doing exactly what they have been

told, but doing otherwise would expose them to the threat of new lawsuits, perhaps filed by these

very same plaintiffs.

As defendants note, the Consumer Financial Protection Bureau ("CFPB") has held the

authority since July 2011 to issue new guidance on how furnishers should report on notes that

have been discharged in bankruptcy.  *See* Statement of General Policy or Interpretation;

Commentary on the Fair Credit Reporting Act, 76 Fed. Reg. 44462-01, 44463 (July 26, 2011).

Yet to date, the CFPB has not countermanded the guidance on the subject previously provided by

the FTC—guidance which has remained in place for more than two decades.  *See* FTC, *40 Years*

---

[14] Several defendants suggest, erroneously, that plaintiffs raise this claim for the first time—and thus too late—in
their opposition to the motion to dismiss.  *See, e.g.*, Bank of America's Reply Br. 7 ("Plaintiffs did not allege such a
claim in the FAC . . . .").

*of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 68 (July 2011), *available at* http://1.usa.gov/1DDgxhp.  If and when a modified administrative interpretation of FCRA is released, furnishers may be forced to choose between following newer guidance and following older jurisprudence.  But for now—while all of the relevant authorities are in accord and while the Third Circuit holds that furnishers are in the best position to determine which disputes are bona fide—I must conclude that the "failure to flag" claim is not potentially meritorious.  Under *Seamans*, therefore, this claim must be dismissed.

### ii.     Failure to correct

Defendants argue that plaintiffs' "failure to correct" claim cannot succeed as a matter of law because plaintiffs have not established that the reporting of zero balances caused plaintiffs to suffer any actual damages.  On that point, defendants cite *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220 (D. Minn. 2013) *aff'd*, 564 F. App'x 878 (8th Cir. 2014) and *Chavez v. Premier Bankcard, LLC*, No. 1:11-CV-01101 LJO, 2011 WL 5417107 (E.D. Cal. Nov. 8, 2011).  While *Edeh* supports the proposition that a plaintiff must establish actual damages to maintain a FCRA negligence claim, that decision was made at the summary judgment stage and turned on the court's finding that plaintiff's proffered evidence of damages was insufficient or inadmissible. *Edeh*, 974 F. Supp. 2d at 1242-45.  Here, I must assume all of plaintiffs' factual allegations as true for the purposes of this motion, so *Edeh* is inapposite.  Likewise, the court in *Chavez* dismissed plaintiff's negligent violation of FCRA claim because "[n]owhere in Plaintiff's amended complaint does he allege any injury as a result of Defendant's actions."  *Chavez*, 2011 WL 5417107, at *4.  Here, by contrast, plaintiffs do allege that they have suffered actual damages as a result of defendants' reporting policies.  As stated in the amended complaint:

> Each and every Plaintiff has sought to achieve a transaction(s) involving credit, whether in the form of home mortgage refinance, modification, automobile

purchase, and the like and each and every Plaintiff has either been denied credit or has been charged excessive rates of interest all stemming directly and proximately from the failure and refusal of each and every Defendant to accurately report current mortgage payments.  The effect has been financially devastating . . . .

FAC 14 ¶ 54 n.6.  Thus, even if *Chavez* controlled here, plaintiffs' allegations of suffering actual damages would satisfy its standard.

But *Chavez* does not even control here—*Seamans* does.  There, plaintiff alleged that defendant's reporting caused "a drop in credit rating and associated loss of credit opportunities." *Seamans*, 744 F.3d at 866.  The Third Circuit found the issue to be a disputed question of fact and held that summary judgment should not have been granted on the claim of negligent violation of FCRA.  *Id*.  Because the amended complaint sufficiently alleges that each defendant's failure to rectify the reporting of zero balances caused harm to each plaintiff, I cannot dismiss the "failure to correct" claim on actual damages grounds.

The claim, however, must still fail.  In *Seamans*, the Third Circuit held that furnishers could be held liable under FCRA for negligently failing to flag credit report entries as disputed, but only where those disputes are "potentially meritorious" or "bona fide."  *Id.* at 867 & n.11. The Third Circuit further held that furnishers could be held liable for negligently failing to *correct* disputed entries—but the court did not specifically include any language restricting the scope of that duty only to "potentially meritorious" or "bona fide" disputes.  *See id.* at 865-66.

It is axiomatic that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982); *see also Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014) ("Where the plain meaning of a statute would lead to an absurd result, we presume 'the legislature intended exceptions to its language [that] would avoid results of this character.'" (quoting *Gov't of Virgin Islands v. Berry*, 604 F.2d 221,

225 (3d Cir. 1979)).  As the Third Circuit has explained, "Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer" in passing FCRA.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010).  It is fully consistent with this purpose—and it avoids an absurd result—to apply the Third Circuit's "bona fide" dispute requirement to the furnisher's duty to correct, as well as to its duty to flag. And for all the same reasons discussed above, plaintiffs have not raised a bona fide dispute here. Plaintiffs' claim of negligent failure to correct under § 1681s-2(b) must therefore be dismissed.

**D.      Were Co-Debtor Plaintiffs' Reports Inaccurate or Incomplete Under FCRA?**

The *Seamans* test must reach a different result with respect to co-debtor plaintiffs Eileen Jackson and Paul Duffin.[15]  These plaintiffs never filed for bankruptcy.  FAC 14 ¶ 53.  As a result, the co-debtors have maintained personal liability on their respective Notes.  *Id.* at 10 ¶ 38. The logic of reporting a zero balance, therefore, does not extend to these co-debtors, as their payments on the Mortgages cannot be seen as voluntary: unlike their spouses, they can still be the target of a deficiency judgment through their individual liability on the Note.  Moreover, reporting the payments of the co-debtors cannot violate their bankruptcy discharge injunctions, as such injunctions do not exist as to them.  On its face, then, it is at least materially misleading and at most outright inaccurate for the two remaining defendants—Wells Fargo and CitiMortgage—to have omitted the payments made by the co-debtors and to have included a zero balance on the co-debtors' credit reports.  Defendants thus had a duty to rectify this information under § 1681s-2(b), and assuming plaintiffs' factual pleadings to be true, defendants breached that duty.  *See* FAC 28 ¶ 69 ("In no case does any Defendant report that current monthly

---

[15] JPMorgan correctly argues that "the Amended Complaint is devoid of any allegations that JPMC reported anything to the CRAs about Wanda Adams" and that she therefore "fails to allege key elements of section 1681s-2(b)."  JPMorgan's Br. 21.  Accordingly, I will grant the motions to dismiss with respect to Wanda Adams as well.

mortgage payments are being made, and there is no payment history to show current monthly mortgage payments.").

Like before, the next question is whether plaintiffs have made out a plausible claim that this breach was willful or, in the alternative, negligent.  Unlike before, the answer to both is yes.  In terms of willfulness, defendants have pointed to no federal agency guidance advising them to report zero balances on the credit reports of co-debtors who have not discharged their liability on the Mortgage or the Note in bankruptcy.  Instead, Wells Fargo appears to rely only on various court decisions.[16]  In particular, Wells Fargo cites *Harper v. Trans Union, LLC*, No. CIV.A. 04-3510, 2009 WL 415940 (E.D. Pa. Feb. 19, 2009).  In that case, plaintiff and her sister took out a mortgage loan together, and the sister later filed for bankruptcy.  Subsequently, plaintiff's credit report included a remark that the mortgage loan was included in bankruptcy—a remark that, plaintiff claimed, misled potential creditors and caused her to be denied further credit.  *See id.* at *3.  Wells Fargo asserts that the court "found no merit in this argument."  Wells Fargo's Br. 17.  Not so.  The court clearly stated that it "need not make a finding on whether the bankruptcy remark was accurate and/or misleading" because it concluded that, at the time defendant acted, it could have reasonably believed this practice was reasonable.  *Harper*, 2009 WL 415940 at *3.  Moreover, in making this determination, the court relied heavily on *Dickens v. Trans Union Corp.*, 18 F. App'x 315 (6th Cir. 2001) (nonprecedential), a case that expressly applied the "technical accuracy" standard that the Third Circuit rejected in *Seamans*.  *See id.* at 318.  And furthermore, the court noted that subsequent decisions had indeed found it potentially misleading to include a bankruptcy remark on the credit report of a non-bankrupt co-debtor.  *Harper*, 2009 WL 415940, at *3 n.4.  One such decision is *Evantash v. G.E. Capital Mortgage Servs., Inc.*, No.

---

[16] CitiMortgage does not address the merits of co-debtor Paul Duffin's claims, making only a procedural argument that Duffin failed to properly notify the CRAs—an argument that I rejected above.

CIV.A. 02-CV-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003).  There, plaintiff and her husband took out a mortgage together, the husband later declared bankruptcy, and plaintiff's credit report subsequently noted that the mortgage was "included in bankruptcy."  *Id.* at *1.  The court held that "[a] reasonable jury could find that the bankruptcy reference in Plaintiff's credit report misled potential creditors into believing that she had filed for bankruptcy."  *Id.* at *4.  The court therefore allowed plaintiff to proceed to trial on claims of willful or negligent violations of FCRA—and to seek punitive damages as well as actual damages.  *Id.* at *8.

In sum, defendants have not put forward any sound support for their practice of reporting zero balances on the credit reports of non-bankrupt co-debtor spouses—and what authorities they have cited actually undermine their own argument upon closer examination.  As to whether this practice constitutes a willful violation of FCRA, I again turn to *Seamans*:

> Liability for willful violations will lie not only in the case of knowing violations of the statute but also if a defendant acts with "reckless disregard" of the statute's terms.  "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." . . .

> In determining whether an actor's conduct was reckless, a court should examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations.  "[A] dearth of authoritative guidance" makes it less likely that a party's conduct was objectively unreasonable, but the absence of such authority does not "immunize" an actor from potential liability where the statute is "far too clear" to support the actors interpretation.

*Seamans*, 744 F.3d at 867-68 (citations omitted).  Under this standard, then, the co-debtors have made out a plausible claim that Wells Fargo and CitiMortgage willfully violated FCRA.

The co-debtors' negligence claim suffices as well.  Again, all plaintiffs alleged that they suffered actual damages as a result of defendants' credit reporting practices.  *See* FAC 14 ¶ 54 n.6.  And for all the same reasons that the co-debtors have made out a plausible claim of

willfulness, I conclude that their dispute is "potentially meritorious" or "bona fide." *See Seamans*, 744 F.3d at 867 & n.11.  The co-debtor plaintiffs can therefore proceed under a theory of negligence liability based on defendants' "failure to flag" the entries as disputed, as well as defendants' "failure to correct" them outright.

## IV.      CONCLUSION

The debtor plaintiffs have failed to state a claim under FCRA for which relief can be granted.  These plaintiffs have had two or four opportunities (depending on whether the previous *Horsch* case counts) to develop this cause of action already, and barring new agency guidance on how post-bankruptcy mortgages should be reported, it would be futile to allow these plaintiffs to amend their claims any further.  *See Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).  I will therefore dismiss the amended complaint, with prejudice, in whole as to Green Tree Servicing, JPMorgan Chase Bank, Bank of America, and Nationstar Mortgage, and in part as to Wells Fargo and CitiMortgage with respect to the claims against them by the debtor plaintiffs.

The co-debtor plaintiffs, Eileen Jackson and Paul Duffin, have made out a plausible claim that Wells Fargo and CitiMortgage willfully or negligently violated FCRA.  I will therefore deny the motions to dismiss by those two defendants with respect only to those two plaintiffs.

An appropriate order follows.